## HARTMANN et al. v. MASTERS et al.*

(Court of Appeals of District of Columbia. Submitted October 8, 1920. Decided December 6, 1920.)

No. 3362.

1. **Insurance ⊛50—Officers have no authority to transfer assets to another corporation.**

    The officers of an insurance company have no authority as such to transfer the business, assets, and policy holders to another corporation without the consent of the insurance company and its stockholders.

2. **Insurance ⊛46—Reorganization properly refused, where control was equally divided between factions.**

    Where a trustee had been appointed for an insurance company at the suit of one faction of its stockholders, which owned half the corporate stock, the court properly refused to authorize reorganization of the company, which would result again in each faction owning an equal amount of stock and re-establish the difficulties which led to the suit.

3. **Insurance ⊛46—Powers of attorney given by policy holders to organizers pending receivership not recognized.**

    Where, in proceedings for the dissolution of an insurance company, in which a receiver had been appointed and was endeavoring to secure the assets from the officers, the officers formed a new corporation, attempted to transfer the business and assets to it, and secured powers of attorney from the policy holders, such conduct is an attempt to frustrate the receivership proceedings, and the assets will not be delivered to the new corporation, nor the powers of attorney recognized, but the funds will be distributed to the policy holders, without allowance for expenses or services in the reorganization.

---

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 254 U. S. —- 41 Sup. Ct. 376, 65 L. Ed. —-.

**4. Insurance ☞43—Policies lapsing after receivership reinstated, in absence of reinsurance.**

In adjusting the claims of policy holders of an insurance company, those who had discontinued payment of premiums when the company ceased to function, or thereafter, and did not obtain reinsurance in another company, because of physical condition or otherwise, should be reinstated and protected to the extent of their interests.

**5. Insurance ☞43—Reinsurance of policy holders of dissolved company should be procured.**

If a reputable insurance company is willing to reinsure as a class the policy holders of a dissolved company, the court which appointed the receiver should approve such reinsurance, and turn over to the reinsurance company so much of the funds in its custody as may be necessary to create a sufficient reserve to secure properly the company which assumes those contracts.

Appeal from the Supreme Court of the District of Columbia.

Suit by Charles A. Hartmann and another against the Royal Insurance Company and others. From a final decree discharging the receiver previously appointed for the insurance company, plaintiffs appeal. Reversed and remanded.

W. Gwynn Gardiner and South Trimble, Jr., both of Washington, D. C., for appellants.

Wilton J. Lambert, of Washington, D. C., and J. K. M. Norton, of Alexandria, Va., for appellees.

VAN ORSDEL, Associate Justice. This appeal is from a final decree entered in the matter of the receivership of the Royal Insurance Company.

The cause originated in a suit by appellants Hartmann and Cohill against the Royal Insurance Company, Samuel J. Masters, John B. Kinnear, and Frank T. Evans for the appointment of a receiver for the Royal Insurance Company, and to recover certain sums of money from Masters and Kinnear; Evans being merely a formal defendant. From an order appointing a trustee for the stockholders of the Royal Insurance Company and for other purposes, the case was appealed to this court. Masters et al. v. Hartmann et al., 45 App. D. C. 253.

From a comprehensive statement in the opinion in that case, it appears that the Royal Insurance Company, with a capital stock of $1,000, held by Hartmann, Cohill, and Evans, was doing an industrial insurance business in the District of Columbia. The Modern Workmen of the World, a Virginia corporation, organized by Masters, Kinnear, and one R. P. Andrews, who were its board of directors and empowered to represent the corporation in all matters, was a mutual company, with no capital stock, engaged in issuing certificates to members entitling them to sick benefits and life insurance. It further appears, as stated in the opinion in the former case (45 App. D. C. 255), that on—

"January 24, 1911, Masters, Kinnear, and Andrews proposed to the Royal Insurance Company to transfer to it all of its liabilities and assets. The assignment was made in writing, and the Royal Insurance Company assumed all of the liabilities of the Modern Workmen of the World, and its obligations to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

certificate holders. Notice was given to these certificate holders, and a printed slip, called a rider, was attached to their certificates, showing that the Royal Insurance Company had assumed all liability. By agreement between the parties, one-half of the capital stock of the Royal Insurance Company was assigned to Masters, Kinnear, and Andrews, who became directors of the Royal Insurance Company, with Hartmann, Cohill and Evans. Masters was elected president and Kinnear treasurer. By this arrangement the directors were equally divided and no business could be transacted unless one of the. divided forces should co-operate with the others. The Modern Workmen of the World had assets at the time amounting to $42,138.44, which were duly assigned to the Royal Insurance Company, and the possession of which was in Kinnear, as treasurer of the Royal Insurance Company. The certificate holders of the Modern Workmen of the World paid their assessments to the Royal Insurance Company, and claims by them were paid by the Royal Insurance Company, as were also those of the certificate holders of the Royal Insurance Company."

Difficulties arose between the insurance commissioner and the Royal Insurance Company. Masters, Kinnear, and Andrews refused to attend meetings of the directors of the Royal Insurance Company, and proceeded to close the office of the company and dispose of its office furniture. They also held the securities assigned by the Modern Workmen of the World to the Royal Insurance Company, assuming to do so as trustees for the Modern Workmen of the World. This operated to practically suspend the business of the Royal Insurance Company. When it became evident that Hartmann, Cohill, and Evans could not procure a meeting of the stockholders of the Royal Insurance Company, this suit was begun. In the former case, we held that Masters, Kinnear, and Andrews—

"had no right, without the authorization of the Royal Insurance Company, to take the assets formerly assigned by the Modern Workmen of the World and hold the same for the Modern Workmen of the World, as they professed to do. They had come into possession of these assets as directors and officers of the Royal Insurance Company. The Modern Workmen of the World had accepted the transfer, and it had retired from business. They were self-constituted trustees of the supposed interest of the Modern Workmen of the World. * * * The assets of the Royal Insurance Company, including those received from the Modern Workmen of the World, are to be conserved and used for the benefit of the policy holders of the Royal Insurance Company and the Modern Workmen of the World, who have accepted the liability of the Royal Insurance Company, and not for that of the stockholders of the Royal Insurance Company. They are in the nature of a trust for the benefit of the certificate holders in that company." 45 App. D. C. 258, 259.

In this situation we ordered that a receiver be appointed for the Royal Insurance Company, with directions to "take possession of its property and undertake to reorganize and manage its affairs under the supervision of the court."

In compliance with the mandate of this court, the court below appointed a receiver, and finally succeeded in compelling Masters and Kinnear to turn over to the receiver the assets of the Royal Life Insurance Company in their possession. In the decree here appealed from, in which the receiver is discharged, the court found that the reorganization of the Royal Insurance Company was "neither necessary nor practicable," and directed the receiver to pay the costs of the receivership, to cancel all the outstanding certificates of stock of the

Royal Insurance Company, and "to deliver to the clerk of the court all moneys, bonds, notes, and other evidences of indebtedness, and all books, records, papers, and other things in his hands as receiver."

The court referred the cause to the auditor under the following findings and instructions:

"(a) The court finds that the Royal Life Insurance Company discontinued its business on February 19, 1912, and failed to perform its contracts of insurance with its policy holders after that date.

"(b) The auditor will state an account showing the liability of the Royal Life Insurance Company, at the time of filing this report, to each and the total to all of its policy holders, whose policies were in full force and effect on February 19, 1912, including the policy holders of the Modern Workmen of the World who accepted the liability of the Royal Life Insurance Company. The status, claim, and right of each such policy holder shall be settled and stated in accordance with the practice in cases of failed and dissolved insurance corporations.

"(c) The auditor will show in said account, where ascertainable, the names of these policy holders who are living and of those persons entitled to the amounts owing on the policies of those who are dead; and he will show why they are so entitled, whether under the terms of the policy, by assignment, by subrogation, or as next of kin or otherwise.

"(d) The auditor will give such notice of the proceedings before him as he deems adequate, by publication in such paper or papers and for such period, not less than 30 days, as the auditor may deem best; and each party hereto is directed to give to the auditor all pertinent information in his possession or knowledge. The auditor will take such testimony as may be necessary, and will report his findings and make his recommendations to the court with all convenient speed, together with the testimony taken before him.

"(e) The auditor will report the balance to be left from the funds after deducting court costs, the costs of this reference, and other expenses and expenditures authorized by this and prior orders of the court. He will state the distribution of the balance among the claims allowed by him under the policies of the Royal Life Insurance Company."

The court then dismissed the petitions and motions inconsistent with this order and retained the case for further proceedings.

It appears from the answer of Masters and Kinnear that in September, 1913, about two years after the Royal Insurance Company took over the business of the Modern Workmen of the World and that company went out of business, a new corporation, the Modern Workmen of the World Society, was organized under the laws of Delaware by Masters and Kinnear, which assumed to take over all the policy holders in the Modern Workmen of the World who had been originally transferred to the Royal Insurance Company, together with all the assets of said company, and, it is alleged—

"carried on the business and protected the said policy holders, and used its assets and moneys for the benefit of said policy holders, those entitled to receive benefit by reason of their membership, and that all this was done under an agreement between the Modern Workmen of the World and the Modern Workmen of the World Society; that the assets received by the Modern Workmen of the World at the declination of the Royal Life Insurance Company should be used by the Modern Workmen of the World Society for the benefit of said policy holders, subject, however, to any decrees that might be made in this cause; that said Modern Workmen of the World Society is now an existing corporation, and has protected the policy holders of the said Royal Life Insurance Company and the Modern Workmen of the World, and is authorized to do business in Delaware and Maryland, and has been doing the business of protecting the original policy holders of said companies, and in

law and equity should be entitled to receive the assets in the hands of the receiver, in order that the decision of the Court of Appeals may be properly carried out, and said assets held and used for the benefit of the policy holders entitled thereto."

[1] It is clear from the foregoing statement from the answer of Masters and Kinnear that the attempt to thus transfer the business, assets, and policy holders of the consolidated Royal Insurance Company, without the consent of that company or of any one legally authorized to make such a transfer, is totally void. Masters and Kinnear, as officers of the Royal Insurance Company, possessed no such authority, and it does not appear that authority was delegated to them by the stockholders of that company.

Referring to the funds in the hands of the receiver, which the court has now directed to be turned over to the clerk of the court, the following disclaimer appears in the answer of Masters and Kinnear:

"The respondents further say that they claim no right, title, or interest in said fund, and never did have any right, title, or interest, but that whatever comes under them should be for the benefit of the policy holders mentioned aforesaid."

This, of course, eliminates them from any claim, otherwise than as stockholders, to participate in any manner in the final distribution of the funds in the hands of the court derived from the assets of the Royal Insurance Company.

In the present stage of this proceeding, Kinnear testified that he obtained and has in his possession powers of attorney from all of the persons who originally had policies in the Modern Workmen of the World or the Royal Life Insurance Company with the riders of the Royal Life Insurance Company attached thereto, except a very few of them, which are in the possession of Judge Norton; that Judge Norton prepared the powers of attorney, after consulting him and Masters; that in 1913, after this suit was begun, he sent these powers of attorney to the policy holders, together with riders transferring them to the Modern Workmen of the World Society; that the riders were all sent out with the powers of attorney, and there were transferred in this manner about 300 of the original Modern Workmen of the World members. Kinnear further testified:

"That he is now collecting premiums from these policy holders, and has since April 3, 1912, but has not collected anything from the Royal Life Insurance members."

This conduct brings the parties involved therein close to the border line of contempt of court. The affairs of the Royal Insurance Company, including the Modern Workmen of the World, had been taken into the custody of the equity court, and were in custodia legis at the moment of the inception of these transactions, which have been brazenly continued throughout the whole period of this litigation. It could have but one purpose—to frustrate and nullify the orders and decrees of the courts.

[2] The court was clearly right in refusing to attempt to reorganize the Royal Insurance Company, since it would result in re-establishing the same situation in respect of the stockholders as existed at the time

this suit was begun. Masters, Kinnear, and Andrews would own 50 per cent. of the stock, and Hartmann, Cohill, and Evans the other 50 per cent. Hence the difficulties leading to this suit would be re-established. On the other hand, if the court recognizes the powers of attorney from the policy holders held by Kinnear and Norton, it would amount to turning the funds extracted from Masters and Kinnear and here sought to be conserved for the benefit of the policy holders, back into their possession, thus frustrating the whole object of this litigation.

[3] The course which equity will pursue in such a situation is clear. In addition to and in modification of the instructions given the auditor, he should be directed by the court to ascertain the amount of premiums collected by Kinnear and the Modern Workmen of the World Society, and the amount, if any, paid out by them to policy holders; and, after deducting from the respective policy holders the amounts so paid to them, which to that extent should be charged against the amount found to be due such policy holders, the balance so received, together with any further assets of the Modern Workmen of the World, which under the consolidation agreement were transferred to and became the property of the Royal Insurance Company, together with any income or profit derived therefrom, the court should order to be paid forthwith into court. No allowance whatever for services or expenses incurred in these transactions by Masters and Kinnear or the Modern Workmen of the World Society should be made. The whole proceeding is such that the parties are without standing in a court of equity.

When the amounts due the respective policy holders have been ascertained, the court will in each case order that distribution be made direct to the proper claimants, ignoring any claim which Masters and Kinnear, Norton, or the Modern Workmen of the World Society may attempt, directly or indirectly, to assert thereto by way of power of attorney, assignment, or otherwise.

[4] In adjusting claims of policy holders, any policy holder who may have discontinued payment of premiums when the Royal Insurance Company ceased to function, or thereafter, and did not obtain reinsurance in another company because of physical condition, or otherwise, should be reinstated and protected to the extent of his interest as the same may appear.

[5] If, however, a reputable insurance company can be found, willing to accept the policy holders as a class, reinsure all of them, including those reinstated, and guarantee to carry out their contracts, and assume the obligations of the Royal Insurance Company in the premises, the court, for the more complete protection of the policy holders, should approve such action, and to that end so much of the funds in the custody of the court should be turned over to the reinsuring company as may be necessary to create sufficient reserve to properly secure the company in assuming said contracts.

When the expenses of this litigation have been fully paid, and the claims of the policy holders satisfied, any balance remaining may be

divided among the stockholders in such manner or proportion as to the court may seem just and equitable.

The decree is reversed, with costs, and the cause is remanded for modification of the decree in accordance with this opinion.

Reversed and remanded.