NATIONAL SURETY CO. ET AL. *v.* CORIELL ET AL.

No. 8. Argued December 15, 1932.—Decided May 22, 1933.

*Mr. Charles H. Tuttle,* with whom *Messrs. Gregory Hankin* and *Saul S. Myers* were on the brief, for petitioners.

*Mr. John S. Sheppard,* with whom *Messrs. Joseph Glass* and *Jerome Weinstein* were on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This case involves the validity of the reorganization of Morris White, Inc., pursuant to a decree of the federal court for southern New York. The old company, a New York corporation, is said to have been the largest manufacturer in the world of ladies' handbags and fancy leather goods. For many years prior to 1930 the business had been very profitable. Then, the company became financially embarrassed, partly through cancellation of orders due to the general depression, partly through withdrawals of large sums by Morris White for investments in stocks and real estate. The bank creditors intervened;

and for nearly six months prior to April 6, 1931, the business was conducted by White under their financial supervision and control. On that day, they caused to be brought in the name of Coriell, a citizen of New Jersey, this suit through which the reorganization was effected.

The bill alleged that the company's assets exceed $4,000,000 and that its liabilities are approximately $1,000,000; that no quick assets are available to meet liabilities immediately payable; and that unless a receiver is appointed the assets will be wasted and the business destroyed through proceedings of creditors seeking payment. The prayers were that a receiver be appointed with power to carry on the business; and that, at the proper time, the properties be sold for the benefit of creditors, or be returned to the company. On the same day on which the bill was filed, the defendant answered admitting its allegations and assenting to the appointment of a temporary receiver. The Irving Trust Company was appointed. The receiver employed as counsel the solicitor for the complainant.

The receiver called promptly a meeting of the creditors; and a committee there elected examined into the company's affairs. The committee prepared a plan of reorganization which was submitted to the court in the form of an offer by Lily White (wife of Morris) to purchase all the assets. The plan (with later amendments) provided that all the purchased assets should be transferred, subject to existing liens, to a new corporation called the Morris White Handbags Corp.; that all creditors of the old company having claims not exceeding $100 be paid in cash; that the claims of creditors having priority by law, the fees and expenses of the receiver, the counsel fees and other expenses of the Creditors' Committee, be paid or assumed by the new company; and that all other creditors should receive in payment of their claims 20 per cent in

unsecured notes of the new company and 80 per cent in its preferred stock. No new money was to be embarked in the enterprise by either the Whites or others. Morris White (who had created and managed the business and owned all of the stock of the old company except a minority interest held by his brother, an employee) was to agree to serve the new company for three years at a salary not exceeding $60,000 a year. He and his wife were to have all of the common stock and, through control of the board of directors, substantial control of the new corporation. Accompanying the offer was an accountants' certificate, unitemized, stating that the liabilities shown on the books of the company as of April 6, the date of the appointment of the temporary receiver, were $1,072,000.30.

On May 12, 1931, the District Court entered an order requiring creditors to show cause on May 26th why that offer should not be accepted; and to consider and act upon any other offer which might then be made. On May 26th and 27th hearings were held. The receiver made no recommendation. The committee made no written report. Its counsel, who represented also several of the bank creditors, recommended, on its behalf, acceptance of the plan. He stated that the committee believed, in view of Morris White's record of achievement, that he would within a few years earn profits sufficient to pay all the creditors amounts equal to their existing claims, if he were permitted to resume the control and management of the business, with the prospect of complete ownership. The bank creditors and the larger merchandise creditors urged acceptance of the plan. The federal and state governments offered to agree that the taxes due them might be paid by the new company in instalments.

The receiver had made no inventory and had not determined the amount of the liabilities. No one had made

even an estimate of the value of the assets as of the date of the order to show cause, or, except as stated below, as of the date of the hearing. No figures were presented to indicate the course and results of the business while under the informal supervision and control of the banks, during the five months prior to the appointment of the temporary receiver; or during the seven weeks following his appointment. But that the bill had grossly overstated the assets was obvious. Instead of assets exceeding $4,000,000 as there alleged, it appeared that those available were worth, at most, a fourth of that amount. Items aggregating $2,277,714.89 consisted of obligations and securities of associated and subsidiary companies, which were probably worthless. The substantial assets consisted, according to the books, of the following items: Merchandise and supplies which had cost $1,241,208.09; bills receivable aggregating $301,852.12, of which $251,-409.42 were pledged to the banks; machinery entered as having cost, less depreciation, $74,265.01; and $5,614.60 cash. Based on an appraisal made by a subcommittee shortly after the appointment of the temporary receiver, the Creditors' Committee estimated the value of the merchandise as of that date to be $717,000, on the basis of a continuing business. Counsel for the receiver, estimating the value of the merchandise as of the date of the hearing, on the basis of a continuing business, stated that it was worth about $462,500; and that there was cash on hand in the amount of $54,000 and unpledged accounts receivable of $67,000. He stated that the committee estimated the value of the merchandise, if disposed of at forced sale, to be $357,000. Another statement was made to the effect that the committee estimated the total value of the assets at forced sale to be $182,000. Whether this figure included the assets pledged to the banks was left in doubt. The court was told that Morris White had an informal

assurance that banks would give to the new company the necessary temporary accommodations required for working capital.

A substantial minority of the creditors objected strenuously to the acceptance of the plan. The dissenting creditors urged, in support of their objections, that no inventory and valuation of the assets had been made by the receiver or under any order of the court; and that not even the amount and character of the liabilities had been determined by the receiver, or otherwise by the court. They questioned whether bank creditors had not received (while they were in substantial control of the business) unlawful preferences. They asked that time be given for the appropriate determination of these matters and for further investigation as to the merits of the plan. They pointed out that under it the banks were to receive notes and preferred stock to the full amount of their claims, although they held assigned accounts as collateral. And they protested against disposing of the assets otherwise than for cash after public sale and without competitive bids being sought. The committee of creditors insisted that any delay would be disastrous, the business being seasonal.

The District Judge announced, at the close of the hearing on May 27th, that he would direct the receiver to accept the Lily-White offer. An order making permanent the receivership was entered later. On June 15, 1931, pursuant to the decree, the assets were transferred to the Morris White Handbags Corp. And it entered upon the conduct of the business, although application for allowance of an appeal had been promptly made by the National Surety Company and other dissenting creditors. Five months later the Circuit Court of Appeals reversed the decree of the District Court and remanded the cause

for further proceedings in accordance with its opinion. 54 F. (2d) 255.

The Court of Appeals held, among other things, that creditors who refuse to assent to a plan of reorganization have " the right to share immediately in a forced sale of the corporation's assets "; and that a court of equity lacks " power to compel a creditor of any kind to accept stocks or promises to pay in the future in full extinguishment of his claim, without being afforded the alternative of receiving his proportionate share of the proceeds of the conventional sale of the property in cash." It declared that ordinarily dissenting creditors would be " entitled to a public sale with competitive bidding, the assets to be sold to the highest bidder "; that this right must be fully protected; but that, in the case at bar, this right could be fully protected without setting aside the sale made to the new corporation; that the right of the dissenting creditors would be protected " by having an appraisal of the value of their respective claims made before a master, to be appointed, who will take an account of the assets and liabilities of Morris White, Inc., ascertaining the value of the assets as if sold at a public sale "; by the payment to them of " their proportionate share of the price which would have been realized at such sale after deduction of administrative expenses "; and by providing that if " payment is not thus made in cash, the several amounts which appellants are found entitled to may be collected by a sale of the property transferred to the new corporation."

Pursuant to the mandate of the Circuit Court of Appeals, the District Court entered on February 2, 1932, a decree which ordered that (subject to the orders to be made), " the reorganization plan approved by it June 15, 1931, be allowed to continue in operation and the Morris White Handbags Corporation be and is hereby permitted to continue in the conduct of the business heretofore

transferred to it. . . ."[1]  On February 23, 1932, the dissenting creditors petitioned for a writ of certiorari to review the decree of the Circuit Court of Appeals entered November 23, 1931; and the writ was granted on May 12, 1932.  286 U.S. 537.

---

[1] The decree entered February 2, 1932, modified that of June 15. 1931, as follows:

(A) It reversed the same so far as it affects the rights of the National Surety Company and the other dissenting creditors.

(B) It provided that a special master be appointed who shall:

(1) "Ascertain the several amounts of [their] respective claims," among other things.

(2) "Make an appraisal of the realizable value of said claims as of June 15, 1931" and that to this end the Special Master "shall ascertain and report the then realizable value of said assets as if sold at a public sale; and shall also take account of the liabilities of Morris White, Inc., as of April 6, 1931, and shall ascertain and report which, if any, of said liabilities are entitled to priority of payment; and shall also take an account of the obligations of the Receiver herein and of the expenses of administration of the estate herein incurred up to the fifteenth day of June, 1931; and shall determine through examination of officers and/or agents of the defendant and/or The Morris White Handbags Corporation, the nature, quality and amount of inventory on hand as of such dates as may be pertinent to this inquiry; . . .

(3) "Ascertain and report the aliquot share of the assets to be awarded and paid in cash, subject to further order of this court, to National Surety Company [and to the other dissenting creditors] out of the sum ascertained to be the amount that would have been realized for the assets of Morris White, Inc., on June 15, 1931, had a public sale of said assets been held, after the deduction from said sum of such portion of the obligations of the Receiver and the expenses of administration herein as would have been properly chargeable against the estate had the assets of Morris White, Inc., been liquidated by sale, and the proceeds distributed to creditors in ordinary course, and after the deduction of the liabilities of Morris White, Inc., entitled to priority of payment; or at the option of each of them the preferred stock and notes heretofore offered to them, pursuant to said offer of Lily White, may and shall in like manner be valued by

The petitioners contend that the District Court had no power to deprive the dissenting creditors of a cash share in the assets; that the amount of this share should have been determined by a public sale; that the right of dissenting creditors was not protected by the decree directing an appraisal (in, 1932) of the assets as if disposed of at public sale on June 15, 1931; and that they were entitled to recover their claims in full. The respondents insist that the District Court had power to compel participation in the reorganization without the alternative of a share of the assets in cash; and that even if the District Court lacked that power, the modification of the decree by the Circuit Court of Appeals gave full protection to the rights of the dissenting creditors. We, have no oc-

---

said Special Master, as of the date the reorganization plan became effective, to be awarded and to be paid in cash to them or any of them subject to the further order of this court; . . .

(4) "That pending the entry of an order of this court upon the report of the said Special Master and for the purpose of securing to National Surety Company [and the other dissenting creditors] payment by the said The Morris White Handbags Corp., out of the assets transferred to the said The Morris White Handbags Corp., pursuant to the order herein dated June 15, 1931, of the amounts which may be determined to be paid to them in cash upon their respective claims, a lien is hereby imposed upon all the assets of Morris White, Inc., transferred to and remaining in the possession of said The Morris White Handbags Corp., pursuant to said order dated June 15, 1931; except that as to such of said assets as the said The Morris White Handbags Corp. shall hereafter in good faith transfer in the regular course of its business for fair and proper consideration, said lien shall attach to the proceeds of such transfer or successive transfers of such proceeds, and the said The Morris White Handbags Corp. is hereby enjoined and restrained subject to the further order of this court, from transferring any of said assets or Morris White, Inc., remaining in its possession except in good faith in the regular course of its business and for fair and proper consideration, unless the said The Morris White Handbags Corp. shall file a bond or other security in such amount as may be fixed and approved by this court after hearing the parties in interest; . . ,"

casion to pass upon any of these contentions.[2] For we are of opinion that the decree approving the plan should have been reversed in its entirety, because the procedure pursued by the District Court was improper.

*First.* The non-assenting creditors were entitled to have the plan and their objections considered in an orderly way, and to a decree based on adequate data. The District Court had before it, in support of the plan, only informal, inadequate and conflicting *ex parte* assertions unsupported by testimony. It undertook to pass upon the wisdom and fairness of the plan of reorganization; and the rights of non-assenting creditors. For the proper disposition of these questions definite, detailed, and authentic information was essential. Such information was wholly lacking. The receiver submitted no facts and made no recommendations. There was no evidence on which the court could have found even that a majority of the unsecured creditors favored the plan.[3] There was

---

[2] The petitioners made the further contention that the court should have ordered the case to proceed in bankruptcy, or at least should not have permitted it to continue in equity. This question was not before us on the writ of certiorari. The order of June 3, 1931, making the receivership permanent, recited that there was no opposition to the order. It was affirmed by the Circuit Court of Appeals, and certiorari was denied by this Court. 286 U.S. 553.

[3] Even the number of creditors appears to have been undetermined. The number was stated by Mr. White to be 150, in addition to 5 bank creditors. The president of one of the creditor banks gave the number as 150 including the banks. Counsel for Morris White, Inc., stated that there were 245 creditors, "not 145." Counsel for the receiver stated that there were 193 creditors whose claims were each less than $100. Counsel for Morris White, Inc., gave the number of such creditors as 50 or 100. The amount represented by the creditors' committee appears likewise to have been in doubt. Counsel for the committee stated that it represented merchandise claims in the amount of $178,000. Counsel for Morris White, Inc., stated that the committee represented merchandise claims of over $300,000; later he gave the figure as $180,000 out of $442,000 of

no valuation of the assets by a disinterested appraiser; no account of the results of the operations of the business during the five months in which it was under the control of the banks; no account of the result of the operations under the receivership; and no dependable schedule of liabilities of the corporation showing the number of creditors, the amount owed to each, and the collateral held. A trustworthy appraisal; an account showing the result of recent operations of the business; an accurate determination of the number of creditors, the amounts of their respective claims, and the extent to which collateral given or payments made to them might be deemed preferences; these were facts which might have influenced the court in deciding whether the plan should be approved or should be approved only upon a public sale. The failure to require relevant data before deciding whether the plan should be approved was not cured by the declaration of the Circuit Court of Appeals that the dissenting creditors were entitled to an aliquot share of what, a year later, it might be estimated the property would have brought at a public sale, and authorizing them to recover that amount, if assets to satisfy their claims were then available.

*Second.* Every important determination by the court in receivership proceedings calls for an informed, independent judgment. In the case at bar special reasons existed why the court should have secured adequate, trustworthy information. The proceeding was not an adversary one; and jurisdiction rested wholly upon the consent of the defendant corporation.[4] The court did not have

merchandise claims. At the argument in this Court it was stated that, at the hearing before the District Court pursuant to the mandate of the Circuit Court of Appeals, a new claim against Morris White, Inc., in the sum of $1,025,000 was presented and that a rule to show cause issued.

[4] Compare *Harkin* v. *Brundage*, 276 U.S. 36, 52, 55; *Michigan* v. *Michigan Trust Co.*, 286 U.S. 334, 345; *Municipal Financial Corp.*

the advice of its receiver. The creditors who approved of the plan of reorganization appeared to be actuated in their recommendations and desires by considerations not applicable to the dissenting creditors. For the bank creditors, unlike the others, were to a large extent secured by the pledge of assets and may, moreover, have received preferences which would be held invalid if bankruptcy proceedings were instituted. The assenting merchandise creditors were interested not merely as creditors but as sellers of goods; and it appeared that at least some were far more interested in expected profits from future sales than in possible dividends on their existing claims. On the other hand, the dissenting creditors, largely credit indemnity companies, were anxious to have determined the amounts of their risks and to obtain as promptly as possible dividends in cash.

The respondents directed attention to the proposed amendments to the Bankruptcy Act, which have been enacted in part since the argument,[5] and, as justifying the procedure challenged, urge that those amendments confer power on the District Courts in Bankruptcy similar to that exercised in the case at bar. But this is not true. Those amendments relating to compositions and exten-

---

v. *Bankus Corp.*, 45 F. (2d) 902; *Kingsport Press, Inc.* v. *Brief English Systems, Inc.*, 54 F. (2d) 497, 501.

[5] Act of March 3, 1933, c. 204, § 1, 47 Stat. 1467. Particular attention was called to the proposed section providing for corporate reorganizations. This section was not enacted. It was intended as an extension of the principle of composition agreements. "that the views of a substantial majority of the creditors should control the measures to be adopted for the protection and preservation of their rights in the failing business, subject at all times to a finding by the court that what they propose is fair and equitable to the minority." See Report of Attorney General on Bankruptcy Law and Practice, Appendix to Message of the President Recommending the Strengthening of Procedure in the Judicial System, Sen. Doc. No. 65, 72d Cong., 1st Sess., p. 90,

sions for insolvent debtors make detailed provision for an inventory by the receiver; for a schedule of liabilities; for an examination of the debtor; and for fixing, with reference to the convenience of the parties, a date and place for hearings upon applications for confirmation of composition or extension proposals.[6]

The decree of the Circuit Court of Appeals is reversed; that of the District Court entered February 2, 1932 vacated; and the case is remanded to the District Court for further proceedings not inconsistent with this opinion. We do not pass upon the scope, the measure or the incidence of the relief to which the petitioners are entitled; among other reasons, because of the following facts brought to our attention at the argument. On April 29, 1932, the Morris White Handbags Corp. was adjudged bankrupt. On June 6, 1932, a sale for $53,850 of all its tangible assets was confirmed by the District Court. The Morris White Handbags Corp., its trustee in bankruptcy, and the purchaser at the bankruptcy sale are not parties to the case at bar.

*Reversed.*

---

[6] Section 74 (b)-(g). The procedure was designed to be more rigorous than that previously obtaining. See Report of Attorney General, *supra*, note 5, p. 87; also, Hearings before the Subcommittees of the Committees on the Judiciary, 72 Cong., 1st Sess., on S. 3866, p. 635 (Statement of Lloyd Garrison, Special Assistant to the Attorney General); *id.*, p. 113 (Annotation to subsection (b)). The requirements for the reorganization of railroads are more rigorous.

Compare the recommendations of The Special Committee on Equity Receiverships of the Association of The Bar of The City of New York, Year Book, 1927, pp. 299-331; *id.*, 1930, pp. 407-411; *id.*, 1932, pp. 333-334; and the minority report, *id.*, 1930, pp. 411-422. See also Equity Rules IV-XI, Southern District of New York, effective July 1, 1931.