**ROYAL UNION LIFE INS. CO. v. GROSS et al.***

**GREAT REPUBLIC LIFE INS. CO. v. SAME.**

**Nos. 10090, 10106.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 25, 1935.

Guy A. Miller, of Des Moines, Iowa, and John D. McComb, of Jacksboro, Tex.

(Hugh W. Darling, of Los Angeles, Cal., on the brief), for appellants.

J. G. Gamble, of Des Moines, Iowa (R. L. Read, of Des Moines, Iowa, and Fred B. Shoaff, of Fort Wayne, Ind., on the brief), for appellee Lincoln Nat. Life Ins. Co.

Phineas M. Henry and John Inghram, both of Des Moines, Iowa, for L. A. Andrew and E. W. Clark, Commissioner of Insurance of the State of Iowa, receivers of Royal Union Life Ins. Co.

Before WOODROUGH, Circuit Judge, and FARIS, District Judge.

WOODROUGH, Circuit Judge.

On June 3, 1933, a stockholder of the Royal Union Life Insurance Company of Des Moines, an Iowa insurance corporation, filed a bill for himself and others similarly situated alleging, among other things, that the company's outstanding insurance then in force amounted to approximately $145,000,000; that its liabilities, exclusive of capital stock, amounted to $36,729,596.81 and that its assets, though shown in its financial statement to be $38,726,449.81, were of an actual value at least $4,000,000 less than that sum; that it had suffered losses through the mismanagement of its officers; that its earnings were insufficient to maintain its reserves which were substantially impaired; and that for many reasons detailed in the bill the company could no longer function in the ordinary conduct of its business. He prayed for the appointment of a receiver pending final hearing and that upon hearing the temporary receivership be made permanent. The company appearing and consenting, the court appointed a temporary receiver on the same day, who forthwith qualified and took possession. Thereafter pleadings in intervention were filed by creditors and by persons holding policies of insurance issued by the company, alleging, among other things, that the corporation was insolvent and that a permanent receiver should be appointed. The Insurance Commissioner for the State of Iowa also appeared and filed answer and cross petition. He alleged, among other things, that he had ascertained the condition of the defendant company and that the condition "at the present time is such as to render its further continuance in business hazardous to the public and the holders of its policies and contracts of in-

*Writ of certiorari denied 55 S. Ct. 834, 79 L. Ed. ——.

surance," and that a receiver should be appointed. He asserted his right to be appointed such receiver under the laws of Iowa (Code of Iowa, §§ 8660–8663, 8613, 8613-c1, 8613-c2) and prayed that he be given the usual powers of a receiver appointed by the court. The company itself answered, among other things admitting that it had suffered losses, that the market or sales value of its assets was less than book value by reason of the depression, that by the terms of the contracts of insurance issued and outstanding, it was required to earn interest on its investments in the amount of $1,256,577 during the calendar year 1932 in order to maintain the reserve requirements on such contracts of insurance, but that in 1932 its earnings were deficient in the sum of $319,869 and that from January, 1933, to the filing of the bill, insufficient income was earned to maintain the reserve requirements; that "the conduct of the Insurance Commissioner of the State of Iowa has made it impossible for defendant to function any longer in the ordinary and proper conduct of its business"; and "that it is imperative that this Honorable Court appoint a temporary receiver to take charge of the assets of this corporation."

The court set the case down for hearing on the applications for the appointment of a permanent receiver on June 24, 1933, and ordered that notice of the hearing be given to the Attorney General of Iowa as required by the laws of that state in like cases. All of the parties who had filed pleadings appeared before the court on the date set, and the court, having heard evidence as to the condition of the company, found that the condition of the company was such as to render its further continuance in the writing of new business hazardous to the holders of its policies and that the interests of the company and its policyholders required the appointment of a permanent receiver to have charge of and preserve its assets.

The order also contained the recitation that all of the parties agreed to the finding. The court appointed as co-receivers both the Commissioner of Insurance of the State of Iowa, and L. A. Andrews, exacting like bond from each.

No appeal was taken by any one from the order appointing permanent receivers to take charge of the company's affairs and they forthwith qualified and went into possession and control. On July 21, 1933, the

receivers filed an application stating that it was to the best interest of the policyholders of the company that a decision be reached as soon as possible whether the company should be mutualized or reinsured and requesting that they be authorized to accept proposals for mutualization or reinsurance. The court granted the application and directed the receivers to analyze such proposals as were received and to employ a competent actuary to assist in such analysis and to report to the court the proposals received with the receivers' recommendation. Notice of the time and place for the receipt of such proposals was ordered to be given to insurance companies and persons believed to be interested, and by publication.

On November 4, 1933, the receivers filed a petition and report reciting that they had given notice pursuant to the court's order and had received proposals from ten different companies and persons, each of which proposals was outlined as to its distinctive provisions. They reported further: "That the receivers have caused an appraisal to be made of the assets of the defendant company, and from said appraisal have determined that said company is insolvent and unable to meet its obligations to its policyholders, and that it has been insolvent at all times from and including June 3, 1933, the date of the filing of the petition of the plaintiff in this cause, that a liquidation of the assets of said company under present business conditions would result in hardship to its policyholders and would deprive them of their life insurance protection, and that it is necessary and imperative for the protection of the best interests of the policyholders of said company that the life insurance business of said company be reinsured."

Said petition and report contained the following:

"For the purpose of ascertaining the value of the respective claims of policyholders who do not accept the benefits of any reinsurance contract which shall be approved by the court and of general creditors, it is necessary to ascertain the cash liquidating value of the assets of the defendant company as if sold at a public sale.

"That said receivers have caused an appraisal to be made of the cash liquidating value of said assets as if sold at public sale at this date; that the appraisal of the bonds was made at their cash market value when listed and on the basis of the best bids ob-

tainable when not listed; that the appraisal of the remaining assets was made by competent appraisers who have inspected the same and are familiar with the value thereof; that in appraising the real estate mortgages, the appraisers took into consideration the value of the security and the personal responsibility of the debtor, and after valuing said securities on that basis, the receivers, in their appraisal of the value of said securities, have deducted an additional twenty-five per cent of the face value thereof because there is no market for the sale of real estate mortgages at the present time, and it would be necessary to make substantial discounts in order to procure a sale of the same, and said receivers believe that said mortgages could not be sold for cash at greater than the figures given below with the additional discount of twenty-five per cent. That in their final appraisal of the real estate of the defendant company, the receivers have deducted an additional twenty per cent of the appraised value thereof because there is no active market for the cash sale of real estate at the present time as distinguished from sales under contract, and it would be necessary to discount said real estate an additional twenty per cent in order to procure a sale thereof for cash."

A detailed appraisal was filed with the report and by reference made a part thereof and a summary thereof shows a net cash liquidating value of the assets of the defendant, as if sold at public sale on the date of the report, to be $7,040,811.26.' Said report recommended that the parties and creditors of the defendant should have the right to file objections to the valuation contained in said report, and prayed the determination of the value of the respective claims of policyholders and creditors who did not accept the benefits of the contract of reinsurance which should be approved by the court. Later the consulting actuary's analysis of the various proposals submitted for the reinsurance of the company's business was filed, his report also containing his recommendation favorable to the acceptance of the proposal of the Lincoln National Life Insurance Company. The receivers also filed a report showing net liabilities of the company, itemized as to classes, as of June 3, 1933, the date of the filing of the original bill, and an operating statement from that date to November 16, 1933.

On November 4, 1933, an order was entered for a hearing on the petition and report of the receivers to be had November 20, 1933, and prescribing the notice to be given of such hearing, which, among other things, provided: "That if any of the parties hereto, or any creditor of the defendant company, desire to make any objection to the appraisal of the cash liquidating value of the assets of the defendant company as if sold at public sale, they shall make said objections in writing, specifying the specific appraisals objected to and their reason therefor, and shall file said objections in the office of the clerk of this court, and deliver copy of same to the receivers on or before the 17th day of November, 1933."

None of the stockholders made any objection to the valuations and appraisal of assets reported to the court by its receivers. The defendant company filed objections to the recommendations made by the receivers in their report, but did not question the determination of the receivers that the company was insolvent, nor object to the valuation put upon any item of property. The Great Republic Life Insurance Company, appellant herein, appeared and filed objections to the report of the receivers, in which, among other things, it was stated concerning the defendant company: "It is now in the hands of receivers. Its admitted assets are less than its liabilities, and under whatever plan adopted, be it reorganization or reinsurance, by whatever company, all its participating policies should be reduced to a non-participating rate; for the very plain and simple reason that no dividends or refunds will be expected and no charge should be made for what is known cannot be delivered. * * * The Great Republic has never been convinced and is not now convinced that the Royal Union Life Insurance Company is really insolvent. We feel that it is unjust to appraise its assets on a cash liquidating basis at this time."

Beginning on November 20, 1933, pursuant to a previous order of the court, a hearing was had on the report of the receivers at which the Great Republic Life Insurance Company and Royal Union Life Insurance Company, and its stockholders and policyholders, among others, were represented by counsel. No evidence was introduced at the hearing but all parties who had filed objections, as well as others interested in

the proceedings, orally presented to the court their objections to the plan recommended. by the receivers, and those parties who had objected and had submitted plans to the receivers urged the adoption of their respective plans by the court in the place of the plan recommended by the receivers. The hearing continued until the evening of the 23d day of November, 1933, whereupon the court ordered that the objections to the report of the receivers and to the adoption of the report of the receivers were duly submitted.

The court found from the various pleadings, orders, papers, exhibits, and proceedings in the cause that the value of the assets of the defendant corporation upon any fair basis of valuation was insufficient to pay its obligations, and that the company was insolvent and had been insolvent at all times from and including the date of filing the bill; that the plaintiff and all other stockholders had no right or interest in the assets of the company and their rights and claims thereto should be decreed to have terminated; that the company was unable to rehabilitate and reorganize itself as a joint-stock legal reserve life insurance company and that a liquidation of the assets of the company under present business conditions would result in hardship to its policyholders and creditors and an unnecessary sacrifice of said assets and would deprive the policyholders of their life insurance protection; that a reinsurance of the life insurance business of the company would avoid the necessity of a present cash sale of said assets and would preserve to the policyholders the value of the business as a going concern and would adequately protect the rights of general creditors; and that it was necessary and imperative for the protection of the best interests of the policyholders that the life insurance business of the company be reinsured. The court found that the reinsurance proposal made by the Lincoln Company upon the open and competitive bidding that had been had was the best contract obtainable and represented the best value for the policyholders and other creditors. It was ordered that the receivers enter into a reinsurance contract with the Lincoln Company in the form attached to and made a part of the order, and transfer the assets of the Royal Union in accordance with the contract.

Under the terms of the reinsurance contract a lien is imposed against each policy, similar to a policy loan, and other provisions call for an appraisal of the assets of the company on their cash liquidating value to be used in determining the amounts to be paid general creditors and dissenting policyholders in lieu of a judicial sale of such assets.

No supersedeas having been given, the reinsurance contract was entered into and became effective after it was approved by the Insurance Commissioners of Indiana and Iowa, by the court, and by the executive committee of the Lincoln Life Company. On March 20, 1934, the receivers filed a report stating, among other things, that at that time there were only sixty-six policyholders who had definitely refused to accept the benefit of the reinsurance contract and that many policies which lapsed prior to December 1, 1933, had been reinstated; the amount reinstated and in process of reinstatement exceeding the sum of $5,000,000.

No policyholders or creditors of the Royal Union Company have taken any exception to or appeal from the order of the court directing the reinsurance, but the Great Republic Life Insurance Company (now in receivership) is a stockholder owning about 10 per cent. of the stock of the Royal Union, and it has perfected an appeal, having obtained an order for severance and appeal on showing that the original stockholder plaintiff abandoned the case after the judgment. The Royal Union Company has also appealed.

It is presented by appropriate assignments of error that the proceedings by which the Royal Union Company was determined to be insolvent and its stockholders were found to have no right or interest in the assets of the company and their rights and claims were decreed to have terminated, were erroneous. The appellants seek reversal of the decree directing the reinsurance contract and the transfer of the company's assets.

The record presents no grounds for any claim that the Royal Union Company was, in fact, solvent at the time of the decree against it, or that there would be any surplus of assets to distribute among stockholders after payment of the obligations of the company to its policyholders and creditors. Neither can it be claimed successfully that the trial court was without power in a proper case to cause the assets of the company to be transferred and used to obtain reinsurance for the policyholders without subjecting the assets to judicial

sale. Code Iowa 1931, § 8663*; German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; La Tourette v. McMaster, 248 U. S. 465, 39 S. Ct. 160, 63 L. Ed. 362; Phipps v. Chicago, R. I. & P. Co. (C. C. A. 8) 284 F. 945, 28 A. L. R. 1184; Habirshaw Elec. Cable Co. v. Habirshaw Elec. Cable Co. (C. C. A. 2) 296 F. 875, 43 A. L. R. 1035; Hartmann v. Masters, 50 App. D. C. 141, 269 F. 483; Cent. Union Trust Co. v. Missouri, K. & T. R. Co. (D. C.) 28 F.(2d) 176; Kansas City Terminal Ry. Co. v. Central Union Trust Co., 271 U. S. 445, 46 S. Ct. 549, 70 L. Ed. 1028.

The contention on the appeal is that there was no sufficient evidence before the trial court to establish the insolvency of the company and that the trial court did not have before it adequate or trustworthy information or definite, detailed, and authentic information of such insolvency, and that under the procedure that was followed the court could not have reached an informed independent judgment that the company was insolvent or that there was no equity in the assets for the stockholders.

■ The finding of the trial court that the value of the assets of the corporation upon any fair basis of valuation was insufficient to pay its obligations was made upon all of the proceedings which had been had in the case. And we think the conditions revealed by the proceedings compelled the conclusion arrived at by the trial court.

There is nothing to indicate that any of the proceedings were collusive. Although the defendant company appeared and consented to the appointment of the temporary receiver on the filing of the original verified bill, it evidently did so because, as it afterwards pleaded, it was "impossible for it to function any longer" and "it was imperative that a receiver be appointed." It was ably and independently represented throughout the proceedings and its attorneys addressed the court "as counsel for the stockholders and the company" and the trial court had reason to consider, as does this court, that said counsel have been and are informed and concerned for the rights of the stockholders.

Among the stockholders, the appellant the Great Republic Insurance Company had $160,000 invested in the stock, and through its attorneys it appeared as a stockholder having a common interest with the stockholders generally. The plaintiff stockholder who brought the bill was also in good faith in bringing the case and making the allegations of his bill for aught that appears.

The trial court, therefore, was not obliged to entirely ignore the verified and uncontroverted allegations of the plaintiff and the interveners that the assets of the corporation were less than its liabilities and that it was insolvent.

After the issues had been made up by the pleadings, the hearing on the application for the appointment of permanent receiver brought evidence as to the condition of the company before the court. The Commissioner of Insurance for the State of Iowa was sworn as a witness and testified that in August, 1932, he caused what was called a convention examination of the Royal Union Life Insurance Company to be commenced, being an examination jointly carried on by the examiners for the insurance departments of several of the states in which the company did business. The examination was carried on over a period of five months and the voluminous report, signed by the examiners for the Insurance Departments of Iowa, Minnesota, Missouri, Kansas and Nebraska, completed in February, 1933, was identified and considered by the court. It included in detail the operations of the company for a period of twenty-seven months and disclosed a deficit in addition to the capital paid up as of December 31, 1932, in the sum of $1,609,289.41. Another report of examination of the company made by the examiner of the Iowa Insurance Department to the Reconstruction Finance Corporation for the purpose of enabling the company to obtain a loan was also identified and considered on the hearing. It did not show a state of insolvency because it did not disclose fully the difference between the actual and the book value of the assets. At this hearing the court, from the bench, requested the par-

---

* Code of Iowa 1931. "8663. *Securities*. The securities of a defaulting or insolvent company, or a company against which proceedings are pending under the two preceding sections, on deposit shall vest in the state for the benefit of the policies on which such deposits were made, and the proceeds of the same shall, by the order of the court upon final hearing, be divided among the holders thereof in the proportion of the last annual valuation of the same, or at any time be applied to the purchase of reinsurance for their benefit."

ties and their counsel to state whether or not there was any question as to the insolvency of the defendant and none of the parties questioned the insolvency of the defendant. We think that at the stage of the proceedings when the permanent receiver was appointed, the court was well advised upon convincing testimony of the condition of the company relative to insolvency, lacking only the more complete knowledge which came from the actual possession of the property and operation of the company through the receivers. Nor was the attitude of the company's attorney, who was informed of and concerned for the interests of the stockholders, without significance. Conceding the obligation of the trial court to become informed as well as he can before adjudicating in receiverships, ultimately, in receiverships as elsewhere, experience counts on interest asserting itself.

After the receivers had had the assets in their hands for several months and had become fully informed concerning them and had caused them to be appraised by competent appraisers and had filed the itemized inventory, we can see no unfairness in the order of the court requiring any objection thereto to be in writing and specific. The stockholders might well have had ground for complaint if the court had put upon them the burden of making the inventory and appraisal in the first instance. But the receivers whom the court had appointed were peculiarly and specially qualified to inform the court of the true condition of the company relative to its insolvency. It is doubtful whether the court could have found a Master so well qualified to advise on the question of insolvency as were the receivers he had appointed. Their report showed that the assets were worth only a fraction of the liabilities. There apparently was not a question of some item or items of property being worth something more or less than appraised, but the assets were entirely disproportionate to the liabilities. In the absence of objection or counter showing the court rightly deemed itself informed and found insolvency because no other finding was possible.

It would seem that if the decree were reversed it could only be to permit the stockholders to find some ground for objection to the report and appraisals made by the receivers and assert the same, as they had ample opportunity to do before the decree against them was entered.

Both appellants assert that the appeals should be ruled in their favor on the principles laid down by the Supreme Court in National Surety Co. v. Coriell, 289 U. S. 426, 53 S. Ct. 678, 77 L. Ed. 1300, 88 A. L. R. 1231, and First National Bank of Cincinnati v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391. But we find nothing in either of those cases to discredit the procedure followed by the trial court in arriving at its conclusion that the company was insolvent, or to justify reversal of the decree.

We are satisfied that under the procedure followed in the District Court the stockholders of the Royal Union Company were fully apprised that their company was charged with insolvency, requiring its assets to be used to obtain reinsurance; that without undue burden upon them the facts were collated by disinterested officers of the court and reported; that each class of parties interested in the corporation, its stockholders, creditors, and policyholders, was represented throughout the proceedings and, particularly the stockholders, were accorded full opportunity to be heard at all stages of the proceedings; and that there are no just grounds to upset the order and decree appealed from.

Affirmed.