KAUFMAN COUNTY LEVEE IMPROVEMENT DIST. NO. 4 v. MITCHELL et al.

No. 9653.

Circuit Court of Appeals, Fifth Circuit.

Jan. 7, 1941.

---

[6] See our Rule 20(b).

Fred T. Porter, of Kaufman, Tex., and Dwight L. Simmons, of Dallas, Tex., for appellant.

O. D. Brundidge, of Dallas, Tex., and I. W. Keys, of Corpus Christi, Tex., for appellees.

Before SIBLEY, and HOLMES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Kaufman County Levee Improvement District No. 4 in the state of Texas (hereafter called the District) like many other subdivisions of states, found itself hopelessly involved in debt and filed a petition for relief under Chapter IX, Sections 81, 82 and 83 of the Bankruptcy Act as amended, the Chandler Act, 11 U.S.C.A. §§ 401–403. It proposed to settle all of its indebtedness, consisting of outstanding bonds of the principal sum of $617,000, which with accumulated interest, amounted to approximately $900,000, by paying the sum of $49,360 in cash or about eight cents (8¢) on the dollar. More than two-thirds in number and amount of the holders of the outstanding bonds approved the settlement. The appellees with bonds amounting to $109,000 opposed on the ground of discrimination as to those holders who also owned lands in the District. It appeared that the District consisted of some 11,600 acres of land, about 8,500 of which, or some 73% were owned by participating bond holders, whose claims were counted to make up the requisite percentages. As originally filed, an exhibit attached to the petition for relief stated that the plan contemplated "a loan by the Reconstruction Finance Corporation (hereafter called R. F. C.) of $49,360.00 for the purpose of readjusting and financing the outstanding indebtedness of the District" by paying each and all holders eight cents on the dollar of the principal of the bonds in full settlement. The appellee Mitchell, who held some $75,000 of the bonds and also owned 1,302 acres of land in the District, opposed the plan and alleged that in reality, the R. F. C. was to lend the sum of $250,000 out of which the said sum of $49,-360 was to be used in paying in full the outstanding bonds, but that the balance of $200,640 was to be spent on improvements in the District in the way of repairs to levies, dams, etc. However, this loan was conditioned upon the sum of $2 per acre, or a total of $23,200 being raised by the borrower, the District, and the creating of a "permanent maintenance fund" of $10,000 to be expended only with the approval of the R. F. C. No definite arrangement was made for raising this $2 per acre, but presumably it was to be through contributions, by the land owners or taxpayers without any fixed provision for enforcing payment. Appellee, F. H. Hass, the only other opponent, held $34,000 in principal amount of bonds, but owned no land in the District. Others situated similarly to Hass did not vote. Holders of bonds in the principal amount of $415,000 out of said total of $617,000 voted in favor of the plan.

The lower court found that the plan was unfair and discriminated in favor of the bondholders owning lands and against those who did not. Confirmation was denied and the District has appealed. It also found as a fact that the lands were presently worth on an average about $5 per acre, and that it would require some $7.50 to $15 per acre to put them in proper shape, after which the evidence tends to show that they might possess a value, in so far as cultivatable lands were concerned, of as much as $50 per acre. The record also shows that for a long period of time, taxes were not paid; the bonds were in default, the levees and dams were neglected and badly deteriorated; the lands were allowed to grow up in weeds, and that a considerable quantity of bonds were bought by land owners at from 13¢ to 17¢ on the dollar, evidently for the purpose of being used in getting the approval of some such plan as that now under consideration.

It is inconceivable that anyone would have paid such prices and then been willing to take 8¢ on the dollar for the bonds, but for the prospective increase in value of their lands. We agree with the lower judge that the plan was unfair and discriminatory. It is a fundamental principle of the bankruptcy law that there shall be equality among creditors of the same class and that the holders of residuary interests, such as stockholders and others similarly situated, shall not participate to the prejudice of creditors. See First National Bank v. Poland Union, 2 Cir., 109 F.2d 54; Case v. Los Angeles Lumber Company, Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, and authorities therein cited.

The recent case of American United Mutual Life Insurance Company v. City of Avon Park, Florida, 61 S.Ct. 157, 161, 85 L.Ed. ——, handed down by the Supreme Court of the United States, on November 25, 1940, bearing the number 31 on its docket, involved an attempt of a municipality to readjust its affairs under the law now considered. It dealt with a situation in which a so-called fiscal agency had been employed to handle the composition or extension, and the latter, for the purpose of affecting, if not of controlling acceptance of the plan, had bought up some of the securities. The court expressed its disapproval of this action in the following language: "As this court stated in Securities & Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293: 'A bankruptcy court is a court of equity, § 2, 11 U.S.C. § 11, 11 U.S.C.A. § 11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act. * * * A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest.' And see Pepper v. Litton, 308 U.S. 295, 304, et seq., 60 S.Ct. 238, 244, 84 L.Ed. 281. These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization, and the obtaining of assents thereto. As we said in Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 114, 60 S.Ct. 1, 6, 84 L.Ed. 110, 'The court is not merely a ministerial register of the vote of the several classes of security holders.' The responsibility of the court entails scrutiny of the circumstances surrounding the acceptances, the special or ulterior motives which may have induced them, the time of acquiring the claims so voting, the amount paid therefor, and the like. See Continental Insurance Co. v. Louisiana Oil Refining Corp., 5 Cir., 89 F.2d 333. Only after such investigation can the court exercise the 'informed, independent judgment' (National Surety Co. v. Coriell, 289 U.S. 426, 436, 53 S.Ct. 678, 682, 77 L.Ed. 1300, 88 A.L.R. 1231; Case v. Los Angeles Lumber Products Co., supra, 308 U.S. page 115, 60 S.Ct. [page], 7, 84 L.Ed. 110) which is an essential prerequisite for confirmation of a plan. And that is true whether the assents to the plan have been obtained prior to the filing of the petition or subsequent thereto. Where such investigation discloses the existence of unfair dealing, a breach of fiduciary obligations, profiting from a trust, special benefits for the reorganizers, or the need for protection of investors against an inside few or of one class of investors from the encroachments of another, the court has ample power to adjust the remedy to meet the need. The requirement of full, unequivocal disclosure; the limitation of the vote to the amount paid for the securities (In re McEwen's Laundry, Inc., 6 Cir., 90 F.2d 872); the separate classification of claimants (see First National Bank v. Poland Union, 2 Cir., 109 F.2d 54, 55); the complete subordination of some claims (Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669; Pepper v. Litton, supra), indicate the range and type of the power which a court of bankruptcy may exercise in these proceedings. That power is ample for the exigencies of varying situations. It is not dependent on express statutory provisions. It inheres in the jurisdiction of a court of bankruptcy. The necessity for its exercise (Pepper v. Litton, supra, 308 U.S. page 308, 60 S.Ct. [page] 246, 84 L.Ed. 281) is based on the responsibility of the court before entering an order of confirmation to be satisfied that the plan in its practical incidence embodies a fair and equitable bargain openly arrived at and devoid of overreaching, however subtle."

In the present case, the landowning bondholders should either have been excluded from participation in determining the requisite percentages, or there should have been separate classification, whereby those creditors owning no lands could have voted and been recorded as such. It appears from the record that the District is absolutely insolvent and unless some means can be found to readjust its affairs, owners may be compelled to abandon their lands since the indebtedness exceeds the value at this time. Bondholders may thereby lose their investment entirely in the absence of anyone to cultivate the property.

The judgment appealed from is affirmed.