In re WESTERN PAC. R. CO.

WESTERN PAC. R. CO. v. RECONSTRUC-
TION FINANCE CORPORATION
et al., and four other cases.

No. 9714.

Circuit Court of Appeals, Ninth Circuit.

Nov. 28, 1941.

On Petitions for Rehearing Feb. 16, 1942.

Frank C. Nicodemus, Jr., and Pierce & Greer, all of New York City, and C. W. Dooling, of San Francisco, Cal., for appellant Western Pac. R. Co.

M. C. Sloss and Sloss & Turner, all of San Francisco, Cal., for appellant Western Pac. R. Corporation.

Edward G. Buckland, of New Haven, Conn., and William J. Kane, of Baltimore, Md., for appellant Railroad Credit Corporation.

Pillsbury, Madison & Sutro, of San Francisco, Cal., Davies, Auerbach, Cornell & Hardy, of New York City (Felix T. Smith, of San Francisco, Cal., and Harold

C. McCollom, Orrin G. Judd, and Herbert A. Heerwagen, all of New York City, of counsel), for appellant Irving Trust Co.

Garret W. McEnerney and Andrew F. Burke, both of San Francisco, Cal., Whitman, Ransom, Coulson & Goetz and Robert E. Coulson, all of New York City, and Horace E. Whiteside, of Ithaca, N. Y., for appellant A. C. James Co.

C. M. Clay, Asst. Gen. Counsel, and Emmet McCaffery, Counsel, both of Washington, D. C., and James S. Moore, Jr., of San Francisco, Cal. (Claude E. Hamilton, Jr., Gen. Counsel, of Washington, D. C., and Brobeck, Phleger & Harrison, of San Francisco, Cal., of counsel), for appellee Reconstruction Finance Corporation.

Cravath, deGersdorff, Swaine & Wood, of New York City, Morrison, Hohfeld, Foerster, Shuman & Clark, of San Francisco, Cal. (Robert T. Swaine, of New York City, and Herbert W. Clark, of San Francisco, Cal., of counsel), for appellee Institutional Bondholders Committee.

Chickering & Gregory, of San Francisco, Cal., and Milbank, Tweed & Hope, of New York City (Donald M. Gregory, of San Francisco, Cal., and Orville W. Wood and J. Cummings Haslam, both of New York City, of counsel), for appellees Crocker First Nat. Bank of San Francisco and Samuel Armstrong.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

These appeals are from an order of the District Court [1] which, in a proceeding by The Western Pacific Railroad Company, a railroad corporation (hereafter called the debtor), under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, approved a plan of reorganization which had been approved and certified to the court by the Interstate Commerce Commission.[2] The debtor has outstanding:

1. Trustees' certificates issued pursuant to paragraph (3) of subsection c of § 77 in the principal sum of $10,000,000. These certificates are owned and held by Reconstruction Finance Corporation.[3]

2. First mortgage 5% bonds dated June 26, 1916, due March 1, 1946, in the principal sum of $49,290,100, with accrued and unpaid interest [4] thereon of $13,143,776—a total of $62,433,876—secured by a mortgage (hereafter called the first mortgage) of which Samuel Armstrong and Crocker First National Bank of San Francisco are trustees.

3. General and refunding mortgage 5% bonds (hereafter called refunding bonds) dated January 1, 1932, due January 1, 1957, in the principal sum of $18,999,500, secured by a mortgage (hereafter called the refunding mortgage) of which Irving Trust Company is trustee.[5] These bonds are pledged to secure payment of the notes hereafter mentioned. They have not been issued for any other purpose.

4. Notes in the principal sum of $2,963,-000, with accrued and unpaid interest thereon of $899,870—a total of $3,862,870—secured by the pledge of refunding bonds in the principal sum of $10,750,000 and other collateral. These notes are owned and held by Reconstruction Finance Corporation.

5. Notes in the principal sum of $2,-445,610, with accrued and unpaid interest thereon of $146,503 [6]—a total of $2,592,113 —secured by the pledge of refunding bonds in the principal sum of $4,000,000 and other collateral. These notes are owned and held by Railroad Credit Corporation.

6. Notes in the principal sum of $4,999,-800, with accrued and unpaid interest thereon of $1,249,950—a total of $6,249,750 —secured by the pledge of refunding bonds in the principal sum of $4,249,500 and other collateral. These notes are owned and held by A. C. James Company.

7. Unsecured indebtedness to The Western Realty Company in the principal sum of $50,000, with accrued and unpaid interest thereon of $11,667—a total of $61-667.

8. Unsecured indebtedness to The Western Pacific Railroad Corporation (hereafter called the holding company) in the principal sum of $5,768,791, with accrued and unpaid interest thereon of $1,-980,429—a total of $7,749,220.

9. Six per cent preferred stock of the par value of $28,300,000 (283,000 shares of

---

[1] 34 F.Supp. 493, 505–509.

[2] 233 I.C.C. 409, 441–455.

[3] 9 Cir., 122 F.2d 807.

[4] As of January 1, 1939, the effective date of the plan.

[5] Irving Trust Company succeeded The

Chase National Bank as trustee on November 13, 1936.

[6] These are the Commission's figures (233 I.C.C. 452). They differ slightly from those mentioned in the court's opinion (34 F.Supp. 497).

the par value of $100 each) owned and held by the holding company.

10. Common stock of the par value of $47,500,000 (475,000 shares of the par value of $100 each) owned and held by the holding company.

The plan provides, in effect, that the above-mentioned securities and obligations shall be canceled and that, in lieu thereof, the reorganized company [7] shall issue new first mortgage 4% bonds dated January 1, 1939, due January 1, 1974, in the principal sum of $10,000,000, secured by a new first mortgage; income mortgage 4½% bonds (hereafter called income bonds) dated January 1, 1939, due January 1, 2014, in the principal sum of $21,219,075, secured by a so-called income mortgage; new 5% preferred stock of the par value of $31,850,297 (318,502.97 shares of the par value of $100 each); and 319,441 shares of new common stock without par value. These securities are to be distributed as follows:

To Reconstruction Finance Corporation, $10,000,000 of the new first mortgage bonds,[8] $1,185,200 of income bonds, $1,777,-800 of new preferred stock and 15,788 shares of new common stock;[9] to the holders of first mortgage bonds now outstanding, $19,716,040 of income bonds, $29,-574,060 of new preferred stock and 230,593 shares of new common stock;[10] to Railroad Credit Corporation, $154,111 of income bonds, $241,681 of new preferred stock and 35,425 shares of new common stock;[11] to A. C. James Company, $163,724 of income bonds, $256,756 of new preferred stock and 37,635 shares of new common stock.[12] The Western Realty Company and the holding company are excluded from participation in the reorganization.

Objections to the plan were filed by the debtor, the refunding mortgage trustee, the holding company, Railroad Credit Corporation, A. C. James Company, The Western Realty Company and a bondholders' committee [13] representing holders of some of the first mortgage bonds now outstanding. The objections were overruled and the plan was approved. The debtor, the refunding mortgage trustee, the holding company, Railroad Credit Corporation and A. C. James Company have appealed.

■ Neither the debtor nor the refunding mortgage trustee was adversely affected by the plan or by the order approving it. Hence neither of them was entitled to appeal. King v. Buttolph, 9 Cir., 30 F.2d 769; Loomis v. Gila County, 9 Cir., 101 F.2d 827; In re Western Pacific R.R. Co., 9 Cir., 122 F.2d 807. Their appeals are therefore dismissed.

■ The holding company objected to the plan on the ground that it is not fair and equitable,[14] but is unfair and inequitable, in that it excludes the holding company from participation in the reorganization. The objection states that the debtor is not insolvent, but has property of a value greatly in excess of its liabilities. Obviously, if the statement is true, the holding company is entitled to participate in the reorganization, and its exclusion therefrom is unfair and inequitable. Thus, to determine the question raised by the holding company's objection, it was necessary to determine the value of the debtor's property as of the effective date of the plan—January 1, 1939. Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 517-525, 61 S.Ct. 675, 85 L.Ed. 982.

---

[7] The reorganized company may be the debtor or a new corporation to which all assets of the debtor shall be transferred.

[8] Thus the $10,000,000 of receivers' certificates now held by Reconstruction Finance Corporation would be exchanged for new first mortgage bonds, dollar for dollar.

[9] Thus, for each $1,000 of indebtedness evidenced by notes now held by it, Reconstruction Finance Corporation would receive $306.82 of income bonds, $460.12 of new preferred stock and 4.087 shares of new common stock.

[10] Thus, for each $1,000 of indebtedness evidenced by first mortgage bonds now outstanding, holders thereof would receive $315.79 of income bonds, $473.69 of new preferred stock and 3.693 shares of new common stock.

[11] Thus, for each $1,000 of indebtedness evidenced by notes now held by it, Railroad Credit Corporation would receive $59.45 of income bonds, $93.24 of new preferred stock and 13.666 shares of new common stock.

[12] Thus, for each $1,000 of indebtedness evidenced by notes now held by it, A. C. James Company would receive $26.20 of income bonds, $41.08 of new preferred stock and 6.021 shares of new common stock.

[13] The committee consists of Frederick H. Ecker, John W. Stedman and Reeve Schley.

[14] Bankruptcy Act, § 77, sub. e (1), 11 U.S.C.A. § 205, sub. e (1).

Railroad Credit Corporation objected to the plan on the ground that it is unfair and inequitable, in that it discriminates unfairly in favor of Reconstruction Finance Corporation and the holders of first mortgage bonds now outstanding.[15] A. C. James Company objected to the plan on the ground that it is unfair and inequitable, in that it discriminates unfairly in favor of Reconstruction Finance Corporation, Railroad Credit Corporation and the holders of first mortgage bonds now outstanding.[16]

That Reconstruction Finance Corporation, Railroad Credit Corporation, A. C. James Company and the holders of first mortgage bonds now outstanding should participate in the reorganization is conceded. Fairness requires that their participation should be in proportion to the value of their respective claims. The question raised by the objections of Railroad Credit Corporation and A. C. James Company was whether the plan complies with that requirement. To determine this question, it was necessary to determine, as of the effective date of the plan, the value of (1) each of the claims of Reconstruction Finance Corporation,[17] (2) the claim of Railroad Credit Corporation, (3) the claim of A. C. James Company, (4) the claims of the holders of first mortgage bonds now outstanding, (5) the $10,000,000 of new first mortgage bonds, (6) the $21,219,075 of income bonds, (7) the 318,502.97 shares of new preferred stock and (8) the 319,441 shares of new common stock which the plan provides shall be distributed to said claimants.

To determine the value of the above-mentioned claims, it was necessary to determine the value of (1) the debtor's entire property, (2) the property subject to the first mortgage now outstanding, (3) the $18,999,500 of refunding bonds pledged to secure the claims of A. C. James Company, Railroad Credit Corporation and Reconstruction Finance Corporation and (4) the other collateral pledged to secure each of said claims. To determine the value of the refunding bonds, it was necessary to determine the value of (1) the property subject to the refunding mortgage only and (2) the property subject both to the refunding mortgage and to the first mortgage now outstanding. This, of course, necessitated a determination as to which of the debtor's property is, and which is not, subject to each mortgage. Consolidated Rock Products Co. v. Du Bois, supra.

To determine the value of the new first mortgage bonds, income bonds, new preferred stock and new common stock mentioned above, it was necessary to determine the value of (1) the debtor's entire property, (2) the property which would be subject to the new first mortgage and (3) the property which would be subject to the income mortgage.

Subsection e of § 77 provides: "If it shall be necessary to determine the value of any property for any purpose under this section, the [Interstate Commerce] Commission shall determine such value and certify the same to the court in its report on the plan." In this case, as has been seen, it was necessary to determine the value of (1) the debtor's entire property, (2) each of the claims of Reconstruction Finance Corporation, (3) the claim of Railroad Credit Corporation, (4) the claim of A. C. James Company, (5) the claims of the holders of first mortgage bonds now outstanding, (6) the $10,000,000 of new first mortgage bonds, (7) the $21,219,075 of income bonds, (8) the 318,502.97 shares of new preferred stock, (9) the 319,441 shares of new common stock, (10) the property subject to the first mortgage now outstanding, (11) the $18,999,500 of refunding bonds pledged to secure the claims of Reconstruction Finance Corporation, Railroad Credit Corporation and A. C. James Company, (12) the other collateral pledged to secure each of said claims, (13) the property subject to the refunding mortgage only, (14) the property subject both to the refunding mortgage and to the first mortgage now outstanding, (15) the property which would be subject to the new first mortgage and (16) the property which would be subject to the income mortgage. It thus became the duty of the Commission to determine these values and certify them to the court. That duty was not performed.

Lacking the requisite valuation data, the court was in no position to exercise the "informed, independent judgment" which appraisal of the fairness of a plan of reorganization entails. Consolidated Rock Products Co. v. Du Bois, supra [312 U.S. 510, 61 S.Ct. 682, 85 L.Ed. 982]. See, also, National Surety Co. v. Coriell, 289 U.S.

---

15 See footnotes 8–11.

16 See footnotes 8–12.

17 Reconstruction Finance Corporation has two claims—one as holder of trustees' certificates, one as holder of the debtor's notes.

426, 436, 53 S.Ct. 678, 77 L.Ed. 1300, 88 A.L.R. 1231; First National Bank v. Flershem, 290 U.S. 504, 525, 54 S.Ct. 298, 78 L.Ed. 465, 90 A.L.R. 391; Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 115, 60 S.Ct. 1, 84 L.Ed. 110. Therefore, instead of approving the plan, the court should have entered an order dismissing the proceeding or, in its discretion and on motion of any party in interest, referring the proceeding back to the Commission for further action.[18]

The District Court's opinion states (34 F.Supp. 501): "It cannot be gainsaid that the Commission knows all about the Debtor, its property, its history, financial and otherwise, its traffic and revenue, and its financial structure. No official body in the country is better qualified, by reason of experience, ability and specialized knowledge than is the Commission to find the ultimate facts as to the Debtor in relation to any of the matters mentioned." The statement indicates a possible misconception. Subsection e of § 77 provides:

"Upon the certification of a plan by the Commission to the court, the court shall give due notice to all parties in interest of the time within which such parties may file with the court their objections to such plan, and such parties shall file, within such time as may be fixed in said notice, detailed and specific objections in writing to the plan and their claims for equitable treatment. The judge shall, after notice in such manner as he may determine to the debtor, its trustee or trustees, stockholders, creditors, and the Commission, hear all parties in interest in support of, and in opposition to, such objections to the plan and such claims for equitable treatment. After such hearing, and without any hearing if no objections are filed, the judge shall approve the plan if satisfied that: (1) It complies with the provisions of subsection (b), of this section, is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not discriminate unfairly in favor of any class of creditors or stockholders, and will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders; (2) the approximate amounts to be paid by the debtor, or by any corporation or corporations acquiring the debtor's assets, for expenses and fees incident to the reorganization, have been fully disclosed so far as they can be ascertained at the date of such hearing, are reasonable, are within such maximum limits as are fixed by the Commission, and are within such maximum limits to be subject to the approval of the judge; (3) the plan provides for the payment of all costs of administration and all other allowances made or to be made by the judge. * * *"

■ In determining whether a plan of reorganization satisfies the requirements of subsection e, the court is not concluded by any determination made by the Commission, but may, and must, exercise its own independent judgment; and this is true whether such determination relates to value or to some other subject. Initially, however, the duty of determining the value of any property for any purpose under § 77 rests on the Commission, not on the court.

Order reversed and proceeding remanded, with directions to dismiss it or, in the court's discretion and on motion of any party in interest, refer it back to the Commission for further action.

Order On Petitions for Rehearing.

PER CURIAM.

It is ordered that that portion of the decree entered herein November 28, 1941, dismissing the appeals of the Irving Trust Company, as trustee, and Western Pacific Railroad Company is set aside. The petitions for rehearing of the Irving Trust Company, as trustee, and Western Pacific Railroad Company for other relief are denied.

---

[18] Subsection e of § 77 provides: "If the judge shall not approve the plan, he shall file an opinion, stating his conclusions and the reason therefor, and he shall enter an order in which he may either dismiss the proceedings, or in his discretion and on motion of any party in interest refer the proceedings back to the Commission for further action. * * *"