## In re RODOLITZ HOLDING CORP., Abraham J. Rodolitz and Anna Rodolitz, Debtors.

**Bankruptcy Nos. 893–80785–22, 893–80786–22.**

United States Bankruptcy Court, E.D. New York.

Sept. 6, 1995.

Shaw Licitra Parente Esernio & Schwartz, P.C. by Edward Flint, Howard Kleinberg, Garden City, NY, for debtors and debtors-in-possession.

Office of the U.S. Trustee, E.D.N.Y. by Stan Y. Yang, Garden City, NY.

Jack Weisbaum, New York City.

Solomon Green & Ostrow, P.C. by Alec Ostrow, New York City, for the Examiner.

Paul A. Crotty, Corporation Counsel of the City of New York by Carol S. Karpe, New York City.

Herrick, Feinstein, LLP by Joseph M. Vann, New York City, for GMS Capital Corp.

Joseph Nurnberg, c/o Kane, Kessler, Proujansky, Tullman, Presiss & Nurnberg, P.C., New York City.

Windels, Marx, Davies & Ives by Richard C. Rubenstein, New York City, for CRI.

*DECISION OF QUESTIONS WHETHER TO*
*1) ADJOURN THE HEARING ON THE COURT'S CALENDAR*
*2) FIX A DATE FOR A HEARING ON THE DISCLOSURE*
*STATEMENT BEFORE THE COURT*
*3) CONVERT OR DISMISS THESE CASES UNDER CHAPTER 11*
*4) ACCEPT EXAMINER'S RECOMMENDATION*

EDWARD J. RYAN, Bankruptcy Judge.
*WHAT IS A DISCLOSURE STATEMENT?*

As judicial officialdom[1] teaches:

---

**1.** Case Management Manual for United States   Bankruptcy Judges prepared under the direction

After a plan is filed, but before it can be voted on, the court must approve a disclosure statement. A disclosure statement is required to contain "adequate information" as to enable a "hypothetical reasonable investor typical of holders of claims or interest" of each class of creditor, provided for in the proposed plan, to make an informed judgment about the plan. 11 U.S.C. Section 1125.

The legislative history underlying section 1125 states that disclosure "is the heart" of chapter 11, and that the concept of "adequate information" is flexible, so as to:

> develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest. H.R.Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977) [U.S.Code Cong. & Admin.News 1978, pp. 5787].

There is a statutory prohibition against the solicitation of an acceptance or rejection of a plan unless and until the court, after notice and a hearing, approves the disclosure statement. 11 U.S.C. Section 1125(b). This statutory prohibition does not preclude negotiations among the various parties in interest, but only bars solicitation for or against a particular plan. What may constitute an impermissible solicitation will, of course, depend largely on the particular facts of a given case. See, e.g., *Century Glove, Inc. v. First Am Bank of N.Y.*, 860 F.2d 94 (3d Cir.1988) and *In re Rook Broadcasting of Idaho, Inc.*, 154 B.R. 9780 [970] (Bankr.D.Idaho 1993).

\*　　\*　　\*　　\*　　\*　　\*

of the Subcommittee on Case Management of the Committee on the Administration of the Bankruptcy System of the Judicial Conference of the United States with assistance from staff of the

## WHAT IS THE DUTY OF THE COURT WHEN AFTER NEARLY FOUR (4) YEARS, DEBTORS CANNOT OFFER A DISCLOSURE STATEMENT WORTHY OF CONSIDERATION?

Today there are four (4) questions before the Court:

1) Whether to adjourn the hearing on today's calendar.

2) Whether to fix a date for a hearing on the disclosure statement before the Court.

3) Whether to convert or dismiss these cases under Chapter 11.

4) Whether to accept the Examiner's recommendation.

The answers will be found on page 36.

\*　　\*　　\*　　\*　　\*　　\*

The Case Management Manual further instructs us:

> "Conversions or dismissals initiated by a party other than the debtor require a finding of cause by the court under standards set forth in the Bankruptcy Code. Often, the very existence of assets on which creditors are depending for payment are at stake. Expeditious handling by the court is of vital importance to all—the estate, the creditors, the debtor, and other parties in interest." (Page 284)

> "In a chapter 11 case, a motion to convert or dismiss usually arises when a creditor or group of creditors concludes that the financial condition of the debtor is deteriorating rapidly, endangering its ability to effectuate a reorganization, or that assets needed to pay creditors are disappearing, often under suspicious circumstances, and that a trustee is needed to take control of the debtor's business. The court should assume that such a motion will be contested. . . .

In a case under chapter 7, 11, or 12, Fed. R.Bankr.P. 2002(a)(5) requires twenty days' notice to creditors, debtors, and other parties in interest for a hearing on a motion to dismiss a case or convert it to

Administrative Office of the United States Courts and the Federal Judicial Center 1995. (hereinafter "Case Management Manual")

another chapter. Fed.R.Bankr.P. 9006(c)(1) permits the court to shorten the time, on ex parte motion or even sua sponte, if circumstances warrant." (Page 285)

After appropriate "notice and hearing", these cases, filed under Chapter 11 on February 11, 1992, were converted to Chapter 7 cases by "Decision and Order on Motion for Conversion to Chapter 7". See: 11 U.S.C. § 102 which states in part:

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.

The debtors had been alerted that these proceedings were on a most tenuous footing from the earliest stages of the cases. Cf. *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2nd Cir.1988); Fed.R.Bankr.P. 9005 adopting Fed.R.Civ.P. 61. Despite their vociferous protestations to *Newsday* and appellate courts, debtors were never deprived of procedural or substantive due process. Cf. *In re Coffee Cupboard, Inc.*, 119 B.R. 14 (E.D.N.Y. 1990).

### THE CONVERSION

The decision to convert dated August 15, 1994 follows:

Columbus Realty Investment Corporation through its servicing representative Northcorp Realty Advisors, Inc., by its attorneys, Windels, Marx, Davies & Ives moves for an order pursuant to Section 1112(b) of the United States Bankruptcy Code, 11 U.S.C. Sections 101 *et seq.* converting the Chapter 11 case of Abraham J. Rodolitz and Anna Rodolitz to a Chapter 7 liquidation.

Having heard oral argument on this matter and the court being satisfied that, under applicable law, the relief sought in the Motion is appropriate, the court finds:

On February 11, 1992, the individual debtors filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code along with the wholly-owned subchapter-S corporation, Rodolitz Holding Corp., as related cases with the United States Bankruptcy Court for the Eastern District of New York. The court signed an order providing for joint administration of the debtors' related cases and amending the cases' captions.

During the course of the their Chapter 11 cases, the individual debtors have managed their properties and operated their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. An Examiner's report has been filed on the administration.

On January 29, 1993, an order was signed which assigned the debtors' Chapter 11 cases to the undersigned United States Bankruptcy Judge, due to the retirement of Judge Cecelia H. Goetz.

On February 3, 1993, the court entered an order which transferred the debtors' Chapter 11 cases from the United States Bankruptcy Court, Hauppauge, New York to the United States Bankruptcy Court, at Westbury, New York, and changed the assigned numbers of the debtors' cases.

On or about May 2, 1994, the individual debtors filed a First Amended and Restated Plan of Reorganization and moved for approval of an accompanying Consolidated Disclosure Statement, dated on or about May 2, 1994. This Plan of Reorganization came nearly two and one-half (2½) years after the commencement of these cases.

On June 8, 1994 and June 13, 1994, the court conducted hearings on the adequacy of the debtors' disclosure statement. At the hearings, CRI argued that the debtors' Plan of Reorganization was unconfirmable as a matter of law and that it would be futile to consider approval of the Disclo-

sure Statement. After this argument and upon a formal written objection submitted by CRI, the Court, after a hearing on July 20, 1994, declined to approve the Disclosure Statement.

Counsel for the individual debtors asserted that on or about July 18, 1994, the debtors had already filed an amended plan of reorganization. As of July 20, 1994, the amended plan of reorganization had not been served on CRI or other parties in interest. CRI has reviewed a summary of the terms of this amended plan of reorganization as set forth by the debtors in their responsive pleadings. CRI has advised the court that it will vote to reject such plan of reorganization and that it does not believe that a consensual agreement can be reached with the individual debtors.

THE DEBTORS HAVE BEEN UNABLE TO HAVE CONFIRMED A PLAN OF REORGANIZATION IN THE TWO AND ONE–HALF (2½) YEARS THEY HAVE BEEN AFFORDED THE PROTECTION OF THE BANKRUPTCY CODE. IT HAS BEEN SHOWN THAT A CONFIRMABLE PLAN OF REORGANIZATION IS NOT IN PROSPECT. FURTHER DELAY WILL NOT RESULT IN CONFIRMATION OF A PLAN OF REORGANIZATION BUT WILL ONLY JEOPARDIZE THE INTEREST OF ALL CREDITORS OF THE INDIVIDUAL DEBTORS' ESTATES. FURTHER DELAY WILL CERTAINLY RESULT IN PROLIFERATION OF LITIGATION. WITNESS THE TEDIOUS LITIGATION INVOLVING EXCLUSIVE ENVELOPE CORPORATION. (emphasis supplied)

Based upon the foregoing, the case of each of the individual debtors is ripe for conversion to a case under Chapter 7 of the bankruptcy code.

Particular emphasis is given to the matters that were developed at the hearing on the disclosure statement. The Objection of Columbus Realty Investment Corporation to Approval of Debtors' Consolidated Disclosure Statement brings out, in sharp focus, the inequitable nature of the proposal of these debtors and the objections show the gross deficiencies in the disclosure statement. No useful purpose would be served by discussing each of the various phases of this case during the "progress" of the reorganization process.

It suffices to say that upon all the papers and the proceedings heretofore filed and had herein, conversion of each case to Chapter 7 is mandated.

Full consideration has been given to the various problems that were generated by the tactics of the debtors in their dealing with the creditors up to now especially in their relationship to Exclusive Envelope Corporation. But, the principles of equity which govern bankruptcy can fashion a solution to any problem in all of these situations.

The contention that CRI is not the real party in interest here does not deserve comment.

The Court concludes that the Chapter 11 case of Abraham J. Rodolitz and the case of Anna Rodolitz should be and hereby is each converted to a case under Chapter 7 of the Bankruptcy Code.

It is so ordered. Enter.

\* \* \* \* \* \*

### THE "VACATUR" OF THE CONVERSION

The United States Trustee thereupon appointed Richard Stern to serve as Chapter 7 trustee.

Four days later, on "appeal" [2], the conversion was vacated by the District Court. The vacatur of the conversion to Chapter 7 was accomplished by an Order dated August 19, 1994, stating:

"The debtors Rodolitz Holding Corp., Abraham J. Rodolitz and Anna Rodolitz appeal the July 20, 1994 order [decision?] of the United States Bankruptcy Judge Edward J. Ryan converting the above chapter 11 reorganization into a chapter 7 liquidation. The debtors seek an order

**2.** Lawyers appeal from judgments which include orders from which an appeal will lie. The decision of July 20, 1994 had not yet ripened to appealability until August 15, 1995 when the Decision and Order was signed. See: *Fiataruolo v. U.S.*, 8 F.3d 930 (2nd Cir.1993)

directing the parties to show cause why the July 20, 1994 order of Judge Ryan should not be stayed pending the appeal of this order and seek a temporary restraining order pending the decision on the motion for the stay. The parties appeared in Court to address the temporary restraining order on August 19, 1994.

After addressing the issues raised by this appeal as it related to the application for the temporary restraining order, as a result of due process and notice defects in the order of the Bankruptcy Court, the Court recommended and *all the parties to this bankruptcy proceeding consented to vacate the July 20, 1994 conversion order of Judge Ryan and remand the matter to the Bankruptcy Court.* [sic. Emphasis Added]. Accordingly, upon the motion and with the consent of all parties, and for the reasons stated on the record on August 19, 1994, it is hereby

ORDERED, that the July 20, 1994 order of United States Bankruptcy Judge Edward J. Ryan is vacated, the case is restored to Chapter 11 status, and the case is remanded to the Bankruptcy Court for further proceedings.

After remand, the creditor Columbus Realty Investment Corporation may make whatever motion it deems appropriate, if any, in accordance with the Federal Rules of Civil Procedure, the Bankruptcy Rules, and the Local Rules of the Bankruptcy Court of the Eastern District of New York.

It is further

ORDERED, that the Court having vacated the July 20, 1994 order, the application for the temporary restraining order and stay pending appeal need not be decided and the instant appeal is dismissed.

The Clerk of the Court is advised that this Order closes the case.

SO ORDERED.

Dated: Uniondale, New York

August 19, 1994"

\* \* \* \* \* \*

NOTE: This appeal was disposed of in record time. We are informed that the aver-age time to dispose of an appeal is one year. This appeal took only 4 days.

\* \* \* \* \* \*

## THE ABDICATION BY THE CHAPTER 7 TRUSTEE

The chapter 7 trustee, Richard Stern, participated in the vacatur activities. Inexplicably, he did not seek to defend his appointment. Instead, he tacitly consented to his "dis-appointment." He was represented by Solomon, Green & Ostrow, although he had not formally retained them as his attorneys. We shall revisit this.

\* \* \* \* \* \*

## THE ABUSE OF EXCLUSIVE ENVELOPE

While these "reorganization" proceedings were afoot, the debtors surreptitiously had caused involuntary proceedings to be brought against Exclusive Envelope Corporation (hereinafter at times "EEC" or "Exclusive") as a bludgeoning device. The involuntary case, commenced on September 17, 1992, and closed on April 19, 1994, was filed seven months after the commencement of these chapter 11 cases.

On November 30, 1992, my colleague, Judge Robert John Hall, made the following findings of fact in Case No. 892–85167–20, *In re Exclusive Envelope Corp. d/b/a Ace Envelope:*

"8. Exclusive possess [sic] three (3) state court judgments totalling in excess of $4,000,000.00 and is subject to two (2) appeals that have already been fully perfected, briefed and argued before the Supreme Court of the State of New York, Appellate Division, Second Department. If Exclusive's prevails in these appeals, it will obtain a valuable asset in the form of land and a building located in Maspeth, Queens which will facilitate payment to Exclusive's creditors. To a great extent, Exclusive's ability to pay any of its unsecured creditors is dependent upon the outcome of the state court litigation.

9. The Court further finds that the petitioners commenced this involuntary bankruptcy case and adversary proceedings in bad faith. Harvey B. Baum ("Baum"), the attorney representing the petitioners who

commenced the involuntary bankruptcy base and the adversary proceeding against Exclusive is also counsel for Abraham J. Rodolitz, Anna Rodolitz and Rodolitz Holding Corp. (collectively referred to herein as "Rodolitz") each of which are judgment debtors to Exclusive and who are defendant-appellants in the state court action in which Exclusive has its aforementioned judgments.

10. There is ample evidence that the action taken by petitioners, through Baum, appeared to be more designed to frustrate Exclusive's ability to seek the affirmance of its judgments against Rodolitz than to attempt to collect and garner assets for Exclusive's creditors. Baum's actions, which included not only the commencement of these proceedings but also an unsuccessful motion to enjoin Exclusive from prosecuting the appeals in the Appellate Division, appear to the Court to be more beneficial to Rodolitz than to petitioners.

11. In view of the uncontradicted evidence described above it appears to this court that the filing of the involuntary petition and adversary proceedings against Exclusive was initiated in bad faith in an effort to prevent Exclusive's collection of the Rodolitz judgments.

12. As a result of the improper conduct of Baum and others, Exclusive has been substantially damaged. Exclusive incurred legal fees and disbursements in an amount that must be determined at a hearing to be held before this Court.

13. At a hearing on November 10, 1992, this Court found that Exclusive's allegations contained in its moving pleadings and as expressed in oral argument were uncontroverted and the Court adopted said allegations as its own.

14. The exercise of jurisdiction by this Court over the adversary proceedings will result in the occurrence of substantial additional costs of administration to Exclusive's estate with no resultant benefit to the creditors."

\*    \*    \*    \*    \*    \*

## THE INTERLOCUTORY APPEAL

When conversion was ordered, the debtors, uncertain whether they could get a reversal or "vacatur" of the conversion order, rushed to a new settlement with Exclusive Envelope and sought to have it enforced by way of an extraordinary motion.

At this crucial time the key to "reorganization" was to get Exclusive Envelope out of the case.

On August 15, 1994, in the hereinabove quoted "Decision and Order on Motion for Conversion to Chapter 7" this court predicted that conversion was necessary and proper because ...

Further delay will not result in confirmation of a plan of reorganization but will only jeopardize the interest of all creditors of the individual debtors' estates. Further delay will certainly result in proliferation of litigation. Witness the tedious litigation involving Exclusive Envelope Corporation.

It is vital to note that, concurrent with the vacatur machinations, Exclusive Envelope sought an order to show cause, scheduling a hearing on the motion of Exclusive Envelope Corp. "... For An Order Granting Specific Performance Of The Settlement Agreement, As Reflected In The Stipulation And Order Dated May 24, 1994, The Letter Agreement Dated May 11, 1994, The Written Stipulation Between The Debtors And Exclusive Envelope Corp. Dated July 15, 1993 And The Amendments Thereto Dated July 21, 1993, As Filed With This Court (Collectively "Settlement Agreement" And The Order Of December 6, 1993)".

In its decision on that application for order to show cause, this court ruled:

"Prescinding from the need for an adversary proceeding, Bankruptcy Rule 7001, the trustee to be appointed is a necessary party.

It is premature and it would be improvident to attempt, at this time, even to crystalize the various issues which would be presented were the court to hear the parties at such a hearing.

Any system of court procedure worthy of the name requires the observance of certain fundamentals. The parties must pre-

pare papers, sometimes called pleadings, in which they set forth the issues or disputes between them, preferably doing so in such fashion as to make it easy to separate the issues of fact from the issues of law; at the time of hearing some written record must be made of the proceedings, either in the form of a stenographic transcript by a court reporter or by what have been sometimes euphemistically called the judge's "minutes"; if, by common consent or otherwise the issues are changed during the trial or hearing, the change must be evidenced by new or amended papers or pleadings, or by a written order by the judge or a statement made by him and in some way made a part of the written record; and, when the issues are decided by the judge, there must be some writing, generally called a judgment, in which it clearly appears that the judge has made a final disposition of the whole case or that something else remains to be done. That the observance of these fundamentals is in the interest of justice, that it tends to avoid or at least reduce confusion, the great enemy of justice, and that it greatly facilitates the functioning of an appellate court of review is too obvious for comment. We are sorry to say that in the matter now before us neither the judge nor any of the parties seem to have been aware of some of these fundamentals, except after the event.

*In re Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966 (2d Cir.1975):

The application for an order to show cause is Denied."

### THE APPEAL OF THE DENIAL OF THE ORDER TO SHOW CAUSE

The denial of that application for an Order to Show Cause was appealed by order granting leave to file an interlocutory appeal.

In its decision and order, the District court stated:

"In an Order to Show Cause [application?] submitted to United States Bankruptcy Judge Edward J. Ryan on or about July 21, 1994, Exclusive Envelope Corporation ("Exclusive"), the appellant, moved for an order compelling the enforcement of a court ordered settlement between Exclusive and the debtors. Judge Ryan declined to sign the order to show cause and on July 22, 1994 denied the motion in a written decision and order. Exclusive moved pursuant to 28 U.S.C. § 158(a) and 11 U.S.C. Bankruptcy Rule 8003 [sic] for leave to appeal the July 22, 1994 decision and order to this Court.

Although the appellant Exclusive seeks oral argument of this motion, the Court declines to hear oral argument pursuant to 11 U.S.C. Bankruptcy Rule 8003(b) [sic] and will rely on the submitted papers . . . . .

In this case, the Court finds that the July 22, 1994 decision and order denying the application for the order to show cause to enforce the settlement agreement involves a controlling question of law as to which there may be a difference of opinion and further that an appeal of this July 22, 1994 order may advance the ultimate termination of the litigation by requiring the enforcement of the settlement agreement. *See Prudential Lines,* 160 B.R. [32] at 34 [ (S.D.N.Y.1993) ].

Accordingly, based on the foregoing and the fact that the motion for leave to appeal is unopposed since no answers in opposition were filed within ten (10) days after the service of the motion, *see* 11 U.S.C. Bankruptcy Rule 8003(a), [sic] it is hereby **ORDERED,** that the motion pursuant to 28 U.S.C. § 158(a) and 11 U.S.C. Bankruptcy Rule 8003 [sic] for leave to appeal the July 22, 1994 decision and order to this Court is granted.

**SO ORDERED.**

Dated: Uniondale, New York
August 17, 1994"

\*    \*    \*    \*    \*    \*

### THE SECOND EFFORT TO FORCE JUDICIAL APPROVAL OF "THE DEAL"

Thereafter, despite the pendency of that appeal from the denial of an order to show cause, Exclusive Envelope again sought to have its private treaty with the debtors approved.

In a "Decision and Order On Motion Of Exclusive Envelope Corp. For An Order Approving An Amendment To The Prior Settlement Stipulation Dated July 15, 1993 and Amendments Thereto Dated July 21, 1993 and May 24, 1993 Between Debtors And Exclusive Envelope Corp.", the undersigned stated in pertinent part[3]:

> In an effort to crystallize what was requested to be presented to the court in the contested matter, the court reviewed the docket entries and the files of Involuntary Case # 92–85167. [see p. 10 supra]

> The review prompted the court on October 14, 1994, to direct the following:

>> 'Exclusive is directed to supplement the application with the detailed statement of the manner in which the settlement deals with matters arising in, or connected with, the CHAPTER 7, INVOLUNTARY BANKRUPTCY PETITION # 92–85167, EXCLUSIVE ENVELOPE CORPORATION AKA ACE ENVELOPE, FILED SEPTEMBER 17, 1992 AND CASE CLOSED ON APRIL 19, 1994.'

> The review also revealed a letter dated March 14, 1994, from Bizar & Martin, attorneys for Exclusive Envelope Corp., (Docket # 76) in which Irving Bizar wrote to the Department Disciplinary Committee of the Supreme Court, Appellate Division, First Judicial Department as follows:

>> 'In accordance with your request to keep you up-to-date as to the status of the sanctions application pending before Judge Hall in the above captioned matter, this letter will inform you that Exclusive Envelope Corp. has settled all of its claims with the Rodolitzes' interests, which settlement has been approved by Judge Ryan.

>> Our client has directed us to drop and discontinue the sanctions application and in accordance with that directive we have informed Judge Hall that our client wishes to withdraw the sanctions application. We have requested Judge Hall to mark the matter closed.'

The hearing on Exclusive Envelope Corp.'s application for an order to show cause was held on October 17, 1994. At the hearing the attention of the parties was called to the fact that the papers before the court were deficient in that, *inter alia*, the 'Detailed Statement Directed By The Court' was insufficient.

The Detailed Statement failed to disclose the particulars of the settlement of a controversy which is embodied in pleadings in the Chapter 7 Involuntary Petition against Exclusive Envelope Corp.

That controversy is summarized in the docket entries of that case as, *inter alia:*

> (I) 'Motion by Debtor Exclusive Envelope Corporation for Sanctions including costs & reasonable attorneys fees against Harvey Baum, Esq, Kenneth B Schwartz, Esq, J Stanley Shaw, Esq, C Albert Parentes, Esq., Jeffrey M. Zalkin, Esq and the firm of Shaw, Licitra, Parente, Esernio & Schwartz, PC the bad faith filing of an involuntary petition against Exclusive Envelope Corp.' (Docket # 32, 1/27/93, Case No. 92–85167); and

> (II) 'Objection By Interested Party Shaw Licitra Parente Esernio & Schwartz To [32–1] Motion for Sanctions including costs & reasonable attorneys fees against Harvey Baum, Esq, Kenneth B Schwartz, Esq, J Stanley Shaw, Esq., C Albert Parentes, Esq, Jeffrey M. Zalkin, Esq & the firm of Shaw, Licitra, Parente, Esernio & Schwartz, PC the bad faith filing of an involuntary petition against Exclusive Envelope Corp by Exclusive Envelope Corporation.' (Docket # 35, 2/9/93, Case No. 92-85167).

The Detailed Statement also failed to disclose the particular circumstances of the withdrawal by Exclusive Envelope Corp. of its complaint to the Association of the Bar of the City of New York (Docket # 76, 3/16/93, Case No. 92–85167).[1]

---

3. An impatient reader must be alerted to the fact that to understand this case, a full reading of this narration is necessary. This quote continues through page 28 of the instant decision.

[1] By letter dated October 24, 1994, J. Stanley Shaw of Shaw, Licitra, Parente, Esernio & Schwartz, P.C., wrote to the court in part:

The purpose of this letter is to bring or [sic] to the attention of Your Honor the fact that Exclusive Envelope Corp. did *not* file any complaint to the Association of the Bar of the City of New York against our firm or any of its members. Accordingly, no complaint against our firm by Exclusive Envelope Corp. to the Association of the Bar of the City of New York could possibly have been withdrawn. Since it should become apparent to Your Honor after reviewing the Court's file that the statement set forth in paragraph 2 on page 3 of the Order to Show Cause quoted above is erroneous, we would respectfully request that Your Honor take the appropriate steps to amend and/or modify the order to Show Cause, which we understand Your Honor drafted, so that it correctly reflects the status of the matters referred to in such paragraph.

An appropriate response to that letter was not apparent and is not apparent.

At the October 17th hearing the court also called the attention of the parties to the movant's failure to make all parties in interest in these Chapter 11 cases respondents to this application.

At the conclusion of the hearing, the court denied the application for an order to show cause as submitted by Exclusive Envelope Corp.

By its own order to show cause dated October 18, 1994, the court ordered that all parties in interest in these jointly administered cases show cause at a hearing on October 21, 1994, why an order should not be made granting the relief sought by Exclusive Envelope Corp.'s motion.

Because the attorneys for the debtors had alerted the court that the debtors might contend that the making of the Order To Show Cause and the hearing of the application of Exclusive Envelope Corp. violated some stay, the court conditioned its Order to Show Cause upon Exclusive Envelope Corp.'s obtaining verification that nothing inhibited the hearing of the application to amend the settlement.

\* \* \* \* \* \*

The hearing on the court's order to show cause at long last was held on October 27, 1994, the court having been informed on that date that no proceedings pending in higher courts inhibited the hearing of the underlying application of Exclusive Envel-

ope Corp. requesting 'the Court's approval of the amendment of the settlement agreement between Exclusive and debtors, and upon said hearing, should 'so order' the stipulation and order being submitted herein.'

Roy I. Martin's affirmation dated October 4, 1994 in support of the motion at hand states, *inter alia:*

1. I am a member of the firm of Bizar & Martin, attorneys for Exclusive Envelope Corp. ("Exclusive"), one of the creditors of the above-captioned debtors. I submit this affirmation in support of Exclusive's motion seeking an expedited hearing on its motion to further amend the settlement agreement reached between Exclusive and the debtors herein. Annexed hereto as Exhibit "A" is a copy of the Stipulation and Order Exclusive asks this Court to 'so order' which will effectuate the proposed modification to the settlement. The motion is consented to by the debtors and, upon information and belief, will not be opposed by any of the debtors' creditors.

2. The purpose of the proposed modification is to allow the immediate performance of all the parties' terms so that Exclusive may quickly and safely abandon further involvement in debtors' bankruptcy proceedings. The proposed modification also provides debtors the immediate benefit of the use and occupancy of the Maspeth building which Exclusive and debtors have bitterly fought over since 1982. The proposed settlement modification will provide Exclusive with the necessary funds to complete the clean-up at the Maspeth premises and will permit debtors to immediately seek to rent the Maspeth building, providing them with an additional income stream which will convert a languishing asset into a productive one.

3. The reason the within application is brought on by order to show cause is that time is of the essence. In recent months Exclusive's creditors have waited patiently for the completion of the settlement with the debtors so they can receive payment on long outstanding

debts. The recent events in this bankruptcy proceedings, including the Court's conversion of this case to a Chapter 7, the subsequent consensual reversal of that decision by the District court, debtors' motion seeking the recusal of Judge Ryan, and the subsequent mandamus proceeding in District Court seeking the same relief, have resulted, as far as Exclusive is concerned, in additional delays in these proceedings which have frustrated its ability to extract itself from its own financial woes. In the interim, Exclusive has worked with the debtors and debtors other creditors to work out an accommodation, which we here ask the Court to approve, which will permit Exclusive and the debtors to culminate the remaining terms of their settlement agreement without further delay.

4. As this Court may recall, in 1992 Exclusive obtained a judgment in specific performance as well as a substantial money judgment against the debtors after an exhaustive state court trial and appellate process. Debtors filed in bankruptcy shortly after the state court appeals process was exhausted in order to prevent Exclusive from enforcing its judgments. After an 'extraordinary' period in bankruptcy, debtors and Exclusive reached a settlement of their differences which settlement was approved by this Court on or about July 15, 1993. The terms of the settlement were subsequently modified on two occasions, permitting the parties to partially perform their respective obligations (i.e., Exclusive to begin the massive job of moving out of the Maspeth premises, debtors to pay a portion of the consideration for the return of the building). The remaining terms of the settlement were to be performed within a fixed period following the approval by this Court of debtors' plans of reorganization. I need not mention to this Court that for a multitude of reasons, said approval has yet to be obtained.

5. Given the passage of time, there is no reason why Exclusive and debtors should not perform finally the remaining terms of their settlement. This final performance will enhance debtors' estates and will benefit Exclusive as well. A relatively minor amount of clean-up remains to be performed at the Maspeth building. This involves the removal of certain inks contained in metal drums which have to be removed by a environmentally certified carter. These arrangements have been made and debtors have agreed to pay for this removal with funds already being held for the benefit of Exclusive in escrow by debtors' attorneys. The proposed settlement modification merely advances the performance of this final phase of the settlement to the present, rather than tying it to the ultimate approval of debtors' plan of reorganization. Once the building is 'broom clean' and the ink drums are removed, Exclusive and debtors will be able to exchange the keys, title and possession for the balance of the funds currently being held by debtors' counsel in escrow. In addition, under the settlement agreement Exclusive is to receive a $175,000 mortgage and note payable over time. Debtors have requested, and Exclusive has agreed, to substitute different property collateralizing these obligations, presumably to free up other of debtors' assets for use by the estate.

6. Regardless of the ultimate outcome of the plan of reorganization proceedings (or possible conversion or dismissal) before this Court, the proposed modification of the settlement between Exclusive and debtors will benefit debtors' estate. If the settlement cannot be brought to final fruition, or if the debtors Chapter 11 proceedings are dismissed or converted to Chapter 7, Exclusive will be compelled to enforce its rights obtained in the state courts, will disavow any prior settlements with debtors (which it is entitled to do under the various settlement agreements) and will move to sell or lease the Maspeth property for its own use and benefit. One consequence of this action would be additional unwanted court proceedings and delay, which no one will benefit from.

7. It is respectfully submitted that Exclusive's involvement in these debtors' bankruptcy proceedings must be brought to an end, regardless of debtors' ultimate fate before this Court. The proposed amendment to the settlement agreement will permit this result and we ask this Court to expeditiously 'so order' the Stipulation and Order being submitted simultaneously with these motion papers.

\* \* \* \* \* \*

It is noteworthy that the instant application fails to disclose that this Court refused to grant Exclusive Envelope Corp.'s application for an order to show cause why there should not be immediate specific performance of the settlements which are now sought to be amended. The reasons for the refusal are stated in its Decision on Application for an Order to Show Cause dated July 22, 1994. That decision is annexed hereto as an Appendix.

Exclusive Envelope Corp. applied for an Interlocutory Appeal from the Decision and Order dated July 22, 1994. The application was granted by the District Court. The appeal is pending and has been referred to a Magistrate Judge.

Although Exclusive Envelope Corp.'s attorney told the court that the instant application for an order to show cause was brought '. . . in the hopes that the appeal would . . . be rendered somewhat moot as a result of there not being a trustee in place . . .' the court notes that the appeal has not been withdrawn and there has been no judicial determination that the appeal is moot. (this standby, retractable, hideaway, ace-up-the-sleeve appeal is a curious but potent weapon in a litigator's arsenal.)

\* \* \* \* \* \*

At the close of the hearing held on October 27, 1994 Exclusive Envelope Corp.'s application was denied.

The denial was predicated upon the requirement that the relief sought to be obtained be brought by adversary proceeding (Fed.R.Bank.P. 7001) coupled with the deficiency of the Detailed Statement and the pendency of the appeal in the District Court.

Inhibited by the pendency of the above mentioned interlocutory appeal, the court does not comment upon the fact that the current posture of these cases may require *de novo* review of the prior judicial approval of the underlying settlement or settlements which were conditioned upon the confirmation of a plan. For example, contrast 18 U.S.C. § 155 with Paragraph 8 in a 'Stipulation For Compromise And Settlement Of Claims And Interests Held By Exclusive Envelope Corp. Against The Debtors, Debtors' Estates, Rodolitz Holding Corp., Abraham J. Rodolitz and Anna Rodolitz' dated July 15, 1994, which states:

8. *EEC'S WAIVER OF OBJECTIONS TO DEBTORS' RETENTION AND COMPENSATION TO THEIR PROFESSIONAL PERSONALS* (sic): EEC acknowledges that substantial administrative expenses to Debtors' estate derives from EEC's pursuit of its alleged interests and claims; therefore, EEC shall never object to any professional person's retention or application for interim or final fees and withdraws any pending opposition to continued retention of Debtors' accountants or representation of Debtors or retention by any other professional person.

\* \* \* \* \* \*

Following the hearing of the instant application, the court commenced the hearing of 'Motion of Columbus Realty Investment Corporation For An Order Dismissing or Converting The Chapter 11 cases of Abraham J. Rodolitz and Anna Rodolitz Pursuant To 11 U.S.C. § 1112(b); or Granting Relief From The Automatic Stay Pursuant to 11 U.D.C. § 362(d); or Appointing An Operating Trustee Pursuant to 11 U.S.C. § 1104(a)'.

In 'Exclusive Envelope Corp.'s Opposition To Columbus Realty Investor Inc.'s Motion To Convert, Dismiss, Appoint A Trustee Or Lift Stay' dated October 7, 1994, Exclusive Envelope Corp. submits *inter alia* that:

4. Thus, EEC has expended vast sums of money and waived its lien in reliance

of its settlement with debtors, which settlement may be effectively nullified by the dismissal or conversion of this case.

6. Exclusive's [sic] believes that the debtors have worked long and hard in arriving at numerous settlements with its creditors over the long term of these bankruptcy proceedings. As this Court knows, EEC has pushed, prodded, cajoled, kicked and screamed at different times in an attempt to extract itself from its dealings with this Court concerning these debtors. Exclusive believes that but for CRI, debtors' other creditors share EEC's feelings and believe that after so much work and effort, it work [sic] a terrible inequity to all involved to convert or dismiss these proceedings.

11. EEC would respectfully suggest that before the Court commences a hearing on CRI's motion, debtors and CRI be directed (not suggested, not urged) to enter a room, with their counsel and with a representative of the U.S. Trustee's Office (presumably Scott Stuart, Esq. who is fully familiar with these proceedings) and that the U.S. Trustee take charge of a final attempt to reach an agreement. EEC believes that such an effort should begin and not end until either an agreement is reached or the U.S. Trustee reports to the Court that in its opinion, no possible resolution can be reached. EEC believes that only face-to-face negotiation, with the aid of a neutral party, in a neutral setting, not particularly comfortable to either side, essentially inconveniencing all involved in a like manner, is the only way the Court and all the litigants involved in these bankruptcy proceedings can avoid the dire consequences of a drawn out hearing, which likely will result in additional delays and appeals. EEC submits that a huge amount of judicial energy, effort and time would be saved if it directed the face-to-face encounter to take place, immediately, because EEC believes that the conversion of dismissal of these cases, and even the appointment of a trustee, would not be an equitable result to the creditors who have given

their all in reaching a compromise with these debtors.

This suggestion is hardly compatible with proper administration of bankruptcy proceedings.

For the reasons previously stated and mindful of the fact that bankruptcy proceedings must not only seem right, they must be right,[2] the application of Exclusive Envelope Corporation is denied.

---

[2] cf. *Knapp v. Seligson (In re Ira Haupt & Co.),* 361 F.2d 164 (2d Cir.1966) ("The conduct of bankruptcy proceedings not only should be right but must seem right.")

Let judgment enter accordingly.

Dated: Westbury, New York
    November 3, 1994"

\*  \*  \*  \*  \*  \*

### THE ESCAPE OF EXCLUSIVE ENVELOPE CORPORATION

Exclusive Envelope Corp. was extricated from its ordeal by a "quasi-mandamus."

In a decision and order on letter application of Exclusive Envelope Corp. this Court showed that:

"By letter dated November 25, 1994, Bizar & Martin state in pertinent part:

Our firm represents Exclusive Envelope Corp. in connection with the above-referenced bankruptcy proceedings.

Exclusive recently filed a motion seeking leave to appeal from two orders, dated November 3 and November 4, 1994, as amended. Both orders denied Exclusive's application seeking bankruptcy court approval of a modification to a previously court-ordered settlement agreement between Exclusive and debtors.

We enclose a certified copy of the decision of the District Court (Spatt, J.). We also enclose a duplicate original of the modification stipulation. In view of Judge Spatt's order, we respectfully request that Your Honor 'so order' the enclosed stipulation. In addition, we would be grateful if Chambers could provide us with a copy of the so ordered stipulation in the enclosed return addressed envelope.

By order dated November 23, 1994, the district court stated:

In this bankruptcy action, Exclusive Envelope Corporation appeals from two orders of United States Bankruptcy Judge Edward J. Ryan, which are dated November 3, 1994, and November 4, 1994 as amended on November 14, 1994. Exclusive Envelope Corp. ("Exclusive") is a creditor of Abraham Rodolitz, Anna Rodolitz and Rodolitz Holding Corp. ("the debtors") who are each Chapter 11 debtors before the United States Bankruptcy Court.

Exclusive and the debtors entered into a settlement agreement that was approved [sic] by the bankruptcy court in December 1993, and May, 1994. Judge Ryan's Orders of November 3, 1994 and November 4, 1994 (as amended November 14, 1994) deny a motion by Exclusive to modify that settlement agreement. *All other parties to the bankruptcy action either consent to the proposed modification or do not oppose it.* [sic. Emphasis supplied.]

Having reviewed the Orders from which Exclusive appeals, the papers submitted by Exclusive in support of its appeal, and for the reasons set forth on the record on November 22, 1994, it is hereby,

ORDERED, that the Orders of United States Bankruptcy Judge Edward J. Ryan dated November 3, 1994 and November 4, 1994 as amended November 14, 1994, are reversed and set aside; and it is further

ORDERED, that United States Bankruptcy Judge Edward J. Ryan is directed to grant the motion of Exclusive Envelope Corporation to modify its settlement agreement with Abraham Rodolitz, Anna Rodolitz and Rodolitz Holding Corporation forthwith.

Obedient to the mandate of the appellate court it is ordered that the motion of Exclusive Envelope Corporation to modify its settlement agreement with Abraham Rodolitz, Anna Rodolitz and Rodolitz Holding Corporation is granted [1].

1. *Roma Locuta est; causa finita est.* St. Augustine, A.D. 354–430, Sermons 131

SO ORDERED.

Dated: Westbury, New York

November 28, 1994."

\*    \*    \*    \*    \*    \*

## COMMENT ON THE ESCAPE OF EXCLUSIVE ENVELOPE CORPORATION

To this day the undersigned is not fully informed with respect to the terms and conditions of the settlement including the abandonment of the claims asserted by and against the group who were locked in litigation before my colleague, Judge Hall. It may be inferred that he was misled in that regard. See letter to First Judicial Department Disciplinary Committee dated March 14, 1994 from Exclusive Envelope's attorneys hereinabove quoted at page 16:

". . . this letter will inform you that Exclusive Envelope Corp. has settled all of its claims with the Rodolitzes' interests, which settlement has been approved by Judge Ryan."

That letter was "copied" to Judge Hall.

\*    \*    \*    \*    \*    \*

The preferential treatment of Exclusive Envelope offends one of the basic tenets of bankruptcy—equity is equality—equality is equity. See, e.g., *Protective Committee For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), which states in part at page 424, 88 S.Ct. at page 1163:

"[2–7] Compromises are 'a normal part of the process of reorganization.' *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130, 60 S.Ct. 1, 14, 84 L.Ed. 110 (1939). In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts. At the same time, however, it is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court. *National Surety Co. v. Coriell,* 289 U.S. 426, 436, 53 S.Ct. 678 [682], 77 L.Ed. 1300 (1933). The requirements of §§ 174

and 221(2) of Chapter X, 52 Stat. 891, 897, 11 U.S.C. §§ 574, 621(2), that plans of reorganization be both 'fair and equitable,' apply to compromises just as to other aspects of reorganizations. *Ashbach v. Kirtley*, 289 F.2d 159 (C.A. 8th Cir.1961); *Conway v. Silesian–American Corp.*, 186 F.2d 201 (C.A.2d Cir.1950). The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable. *In re Chicago Rapid Transit Co.*, 196 F.2d 484 (C.A. 7th Cir.1952). There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation. It is here that we must start in the present case."

\*    \*    \*    \*    \*    \*

### THE PRESENT POSTURE

A school of thought opines:

Chapter XI [sic] of the federal bankruptcy act offers an opportunity to qualifying debtors to escape bankruptcy court involvement or supervision. With Chapter XI [sic] filings at an all-time high, lawyers need to understand its ramifications. New York State Bar Journal, Vol. 65 No. 2, February 1993, entitled *Chapter 11 Reorganization: A Valid Alternative to Going Out of Business,* by C. Albert Parente.

The correct view is succinctly expressed by Judge Randall in *United Savings Associa-*

tion v. Timbers of Inwood Forest Assocs. (In re Timbers of Inwood Forest Assocs.) 808 F.2d 363 (5th Cir.1987), aff'd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The court observed:

> We do not believe ... that Congress ... intended to relieve the bankruptcy judge of the responsibility of managing the cases before him in such a way as to promote the objectives and goals of the Bankruptcy Code.... [W]e think that each bankruptcy judge is called upon to manage the cases in front of him, fairly and impartially, in such a way as to promote their orderly and prompt disposition. *Id.* at 373–74.

\*    \*    \*    \*    \*    \*

Today, the case is no nearer to confirmation than it was a year ago. Significant time has been spent in unsuccessful efforts to obtain recusal of the undersigned.

Debtors' adversarial bete noire, Exclusive Envelope Corporation, has been eliminated by a "settlement".

There are no real adversarial interests present in the arena. The few remaining principal players continue inert, passive and virtually comatose in the sense of taking meaningful positions in the bizarre circumstances of these cases.

The debtors through their attorneys rule the roost.

One can think only of the evils of the "friendly bankruptcy" which for decades reformers in this field have sought to eliminate.

There has been no creditors' committee in these proceedings.

The Office of the United States Trustee inappropriately has undertaken heroic measures in an effort to project the "reorganization" to its present state, such as that is. We have had the representative of that office who has forgotten, if he ever knew, that his duty was to be a watchdog (not a lapdog) in supervising the administration of cases.[4] See: 28 U.S.C. § 586(a)(3)(B) and (G).

The examiner, represented by Solomon, Green & Ostrow, has abdicated his duties

---

**4.** That representative is no longer with the Office    of the United States Trustee.

and responsibilities to his attorneys. Those members of the bar had represented the chapter 7 trustee when he stood by while his lucrative appointment was aborted.

In March, 1995 Mr. Weisbaum was ordered *inter alia:*

b) to review, analyze and report on "ABRAHAM J. RODOLITZ AND ANNA RODOLITZ INDIVIDUAL DEBTORS' FOURTH AMENDED AND RESTATED PLAN OF REORGANIZATION" including whether the aggregate of the various settlements and agreements between and among the parties in interest and the debtors, heretofore at sundry times brought before the court, constitutes a sub rosa plan looked upon with disfavor and condemned in some courts under the theory expressed by the court in Braniff:

> The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization by establishing the terms of the plan sub rosa in connection with a sale of assets.

*Pension Benefit Guaranty Corporation v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 700 F.2d 935 (5th Cir.1983).

In completing this engagement, the examiner is authorized and directed to continue to investigate and analyze, *inter alia,* intercompany transfers by and between the debtors and their principals and any related entities including limited partnerships and other persons in which Abraham J. Rodolitz and Anna Rodolitz, or either of them have an interest.

IT IS FURTHER ORDERED that the examiner is authorized to retain BDO Seidman and counsel of his choice to assist him in this engagement.

Mr. Weisbaum has not demonstrated any objectivity or enthusiasm in performing his duties. The disclosure statement before the Court is false and deceptive in both its historical narrative and its financial detail.

The examiner's conclusion that the Braniff Principle is no impediment to confirmation of a plan is not acceptable. This is a classic situation where violation of the Braniff Principle is fatal.

It is a concealment statement and a fraud on the Court. The Disclosure Statement and the Operating Reports are ludicrous.

The activities of the titular debtors, Abraham Rodolitz and Anna Rodolitz, remain undefined and obscure. They are shadow figures who have been and are but a front for their sons, the real parties in interest on the debtors' side.

As of this moment, the record fails to show, for example, what has been the income of these debtors and debtors-in-possession during the period of "reorganization". .

Let's take a look at the Examiner's Report dated September 5, 1995:

12. As set forth at length in the Examiner's report and recommendation, dated May 22, 1995, Anna Rodolitz has been receiving $3,100 per week, on account of her interest in Rodolitz Associates, which interest is property of her estate. Unless she has been providing personal services to earn the $3,100 [4], which the Debtors have not contended, this income belongs to her estate, under section 541(a) of the Bankruptcy Code. The operating reports filed by the Debtors and their disclosure statement show that estate funds of approximately $480,500 were used to pay personal expenses as of March 31, 1995. The operating reports reviewed by the Examiner since the prior hearing show that this situation is continuing.

---

[4] Postpetition personal services income is excluded from the estate of an individual. 11 U.S.C. Section 541(a)(6).

13. In his May 22, 1995 report, the Examiner believed that this use of estate property was without authorization, and therefore avoidable under section 549(a) of the Bankruptcy Code. Moreover, this use of estate property represented "cause" within the meaning of section 1112(b) of the Bankruptcy Code to covert [sic] or dismiss the chapter 11 cases.

14. The Examiner has previously recommended against pursuing the avoidance actions and conversion, because the Examiner believed that the Debtors had proposed a plan to pay creditors in full with interest, and that the plan was capable of confirmation within a short period of time. Because of the failure to close the sale of the LIC Property, this state of facts is no

longer operative. Therefore, unless the Debtors take quick and decisive action to stop the diminution of estate assets and restore the feasibility of their 100% plan, the Examiner believes that a change in the administration of these estates is warranted at the present time.

The Examiner has the temerity to report further in this aspect:

19. A chapter 7 trustee with no money would have little incentive to fight CRI, because if he loses, he and his counsel would not have a readily-available source for compensation. Certainly, a section 506(c) charge against CRI's collateral would be unavailable. Moreover, it is difficult to see how pursuing the section 549(a) avoidance action described above would yield a recovery, since the cash has already been spent, and the Debtors' assets consist principally of already encumbered estate property.

Enough is enough!

There is no explanation for debtors' use of the diversity of entities in doing whatever business the debtors do.

The partnership, Rodolitz Associates, has not been fully explored and explained.

The modus operandi is similar to that used to forward the fraudulent scheme described in *U.S. v. Rodolitz*, 786 F.2d 77 (2nd Cir. 1986). See also *U.S. v. Rodolitz*, 648 F.Supp. 430 (S.D.N.Y.1986).

### DENOUEMENT

At the very last moment, the Examiner filed his Examiner's Report and Recommendation Regarding Developments Since the Prior Hearing to Consider (A) Whether to Schedule a Hearing to Consider the Adequacy of the Disclosure Statement or (B) Conversion or Dismissal of Chapter 11 Cases. Mr. Weisbaum makes a recommendation. Careful consideration of the examiner's latest report, in light of all the hereinabove persuades the court to accept only one of those suggestions, conversion.

The charade must terminate. A trustee must be appointed to administer these estates.

### DECISION

The hearing will not be adjourned.

A date will not be fixed at this time for a hearing on the purported disclosure statement.

The cases are converted to chapter 7.